548 A.2d 290

**Paul L. JAWORK**

**v.**

**Patricia A. JAWORK Abrahams & Loewenstein, Appellants.**

Superior Court of Pennsylvania.

Submitted Aug. 15, 1988.

Filed Sept. 16, 1988.

90

Paul J. Downey, Philadelphia, for appellants.

Before CIRILLO, President Judge, and WATKINS and CERCONE, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying appellant Patricia Jawork's (now Patricia Eisele) petition for special relief [1] in connection with the divorce action between her and her husband, Paul Jawork. We reverse.

In December of 1981, the trial court entered a decree of divorce, reserving jurisdiction "to dispose of ancillary matters properly raised by the parties heretofore." Among these matters was Mrs. Jawork's claim for equitable distribution. At the time of the entry of this decree the parties owned real estate on Rising Sun Avenue which was held by the entireties. Pursuant to a settlement later negotiated between the parties, Mr. Jawork agreed to transfer his interest in the property to Mrs. Eisele. On July 23, 1986, the trial court entered an order awarding the marital residence to Mrs. Eisele in full and final settlement of all economic claims presented by her in the divorce action and marking the matter "settled, discontinued and ended."

The problem which was the subject of Mrs. Eisele's August 4, 1986 petition for special relief arose at the June 27, 1986 settlement of the sale of the Rising Sun property by her to a third party. The title report revealed that a lien in favor of her ex-husband's attorneys had been filed against the title in October of 1985. Upon Mrs. Eisele's protest, the amount of the lien was escrowed. Mrs. Eisele then petitioned the court, pursuant to section 403(d) of the Divorce Code,[2] to have the lien declared null and void. The trial court refused to do so and this appeal followed.

1. In contrast to the situation in *O'Brien v. O'Brien,* 359 Pa.Super. 594, 519 A.2d 511 (1987), the order in this case is final and appealable as it was not rendered during the pendency of the divorce action.

2. This section of the Divorce Code reads:

Any encumbrance or disposition of property to third persons who had notice of the pendency of the matrimonial action or who paid

■ Appellant urges us to find that, where economic claims involving marital property held by the entireties are bifurcated from the entry of the decree, the effect of 68 P.S. § 501 [3] is somehow stayed pending resolution of those claims and the relinquishment of jurisdiction over the marital property, thus making the denial of her petition improper.[4] As both parties to this appeal concede, by operation of law, a tenancy by the entireties becomes a tenancy in common upon the divorce of the parties. 68 P.S. § 501. Further, bifurcation of a divorce action is permitted pursuant to Pa.R.C.P. 1920.52(c) [5] which allows the court to separate the granting of the divorce from resolution of the economic claims. 23 P.S. 401(b); *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985). Thus, the status of the title after the entry of the decree is unassailable, as is the court's power

wholly inadequate consideration for such property may be deemed fraudulent and declared null and void.

Mrs. Eisele's petition for special relief argued that the attorney/creditor responsible for the encumbrance, having represented her ex-husband in the divorce action, clearly had the required "notice of the pendency of the action." This argument, however, is not raised on appeal.

3. This section provides:

Whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them may bring suit against the other to have the property sold and the proceeds divided between them.

4. Although not cited by appellant, the only section of the Divorce Code which might arguably support such a result is found at 23 P.S. § 401(j) which states in pertinent part:

Whenever a decree or judgment is granted which nullifies or absolutely terminates the bonds of matrimony, any and all property rights which are dependent upon such marital relation, save those which are vested rights, are terminated unless the court otherwise expressly provides in its decree ...

This case does not squarely present the issue of whether, by expressly reserving the entireties status of marital property until the resolution of the economic claims in a bifurcated divorce, the operation of 68 P.S. § 501 is forestalled. The trial court's entry of the divorce decree here did not so specify and we, therefore, cannot address this issue.

5. Rule 1920.52(c) reads:

The court need not determine all claims at one time but may enter a decree adjudicating a specific claim or claims.

to bifurcate a divorce action. It is the interaction between the two that appellant questions.

The attorney/creditor, who filed an amicus brief in this matter, suggests that the Divorce Code did not repeal by implication the Act of 1949, as amended, found at 68 P.S. § 501.[6] We see no issue of repeal by implication as the two statutes in question do not deal with the same subject matter, *Kelly v. City of Philadelphia*, 382 Pa. 459, 115 A.2d 238 (1955). Even if this hurdle could be overcome, there is no "irreconcilable conflict" between the two. *Kelly, supra*, 382 Pa. at 472, 115 A.2d at 244. The Act of 1949, as amended, is codified at 68 P.S. § 501–504 and governs only the status of the title between divorcing parties; the Di-

6. The attorney/creditor also argues that Mrs. Eisele's petition was untimely since the court had relinquished jurisdiction over the matter prior to her filing of the petition. The trial court alluded to Mrs. Eisele's timing also, but its reasoning is based on waiver. Nevertheless, petitions for special relief are not limited to the period when an action is pending. The rule itself (Pa.R.C.P. 1920.43) begins "[a]t *any time* after the filing of the complaint ..." (emphasis ours). It is easily conceivable that, after the final disposition of all matters in the divorce action, a party may need the assistance of the court in enforcing some portion of its order. *See* 23 P.S. § 401(b) ("Any decree ... shall include ... an order ... determining and disposing of ... any other related matter including the enforcement of separation agreements voluntarily entered into between the parties") and 23 P.S. § 401(c) ("In all matrimonial causes, the court shall have full equity power and jurisdiction ... and may issue ... orders which are necessary to protect the interests of the parties ... and may grant such other relief or remedy as equity and justice require against either party ...") The terms and substance of the July 23, 1986 trial court order disposing of the economic claims were drawn from the agreement reached between the parties. Any further matter having to do with the Rising Sun Avenue property and its transfer between the parties pursuant to the divorce and the court's order was properly brought to the court's attention via a petition for special relief. We agree with the trial court which stated:

> Since this matter was generated directly as a result of the divorce between [the parties] ... and since the placing of the disputed funds in escrow actually occurred before [the July 23, 1986] order disposing of the property rights between the parties, the issues involved are a direct outgrowth of the Family Court action and, in the interest of judicial economy, can be most expeditiously handled by this Court.

The jurisdiction of the trial court to address the instant petition is beyond question. 23 P.S. § 301(a)(5).

vorce Code provides jurisdiction to, inter alia, equitably divide marital property. 23 P.S. § 301(a)(1). The change in legal status of the title does not affect the power of the court to determine the parties' respective rights in the property pursuant to the Divorce Code, nor does the change in ownership status alter its classification as marital. Property does not lose its marital character merely because the entry of a divorce decree in a bifurcated action has, pursuant to 68 P.S. § 501, operated to change the way in which it is held. *See* 23 P.S. § 401(f); *Marinello v. Marinello,* 354 Pa.Super. 471, 512 A.2d 635 (1986) (absent action for partition, separate estates are not created and property is not classified as non-marital pursuant to 23 P.S. § 401(e)(2)).

■ Mr. Jawork became a tenant in common, seized of an undivided one-half interest in the property, on the date the divorce decree was entered. His attorney's October 1985 judgment attached to his interest as a tenant in common. Sometime in the few months following the attachment of this lien, Mr. Jawork agreed that his ex-wife should have the house. The title report prepared in March of 1986 in anticipation of her sale of the property to a third party showed the lien. It also indicated that a deed from Mr. & Mrs. Jawork to Mrs. Eisele was not yet of record.[7] Mrs. Eisele disputed the lien's validity against what she maintained was her one hundred per-cent interest in the property and the amount of the lien was escrowed at settlement.

7. There is no clear evidence of record as to when the parties reached their settlement agreement whereby Mrs. Eisele was to receive the marital residence in exchange for a release of all other economic claims. Mrs. Eisele's petition avers that the settlement was reached in or after February of 1986. The trial court speculates:

> Prior to that time [the March 1986 title report issued in connection with the proposed sale from Mrs. Eisele to a third party and which showed the lien], it seems that [Mr.] Jawork transferred his interest in the marital property to petitioner [Mrs. Eisele], *presumably before the entry of the judgment in 1985.* (emphasis added)

Regardless of when this transfer took place, the underlying issue remains the same since there is no dispute that the parties held the property by the entireties at the time the divorce decree was entered, nor that the lien attached subsequent to the entry of the decree.

Mrs. Eisele then petitioned to have the lien declared null and void.

■ Having established that the petition was properly before the court and that the parties held the subject property as tenants in common as of December 17, 1981, we must now determine whether the trial court abused its discretion in denying the petition for special relief. The granting of appropriate special relief under Pa.R.C.P. 1920.-43 is within the sound discretion of the trial court and is an exercise of its equitable powers. Unless there is an abuse of this discretion, we will not disturb its decision. *Hankin v. Hankin*, 279 Pa.Super. 179, 420 A.2d 1090 (1980), *rev'd on other grounds*, 302 Pa.Super. 295, 448 A.2d 1049 (1981).

In denying the requested relief the trial court did not find that section 403 was inapplicable, but instead relied on the fact that:

[a]t the time of this settlement [June 1986], petitioner still had available to her the safeguards of the Code and the relevant procedural rules which would have required her ex-husband to file an Inventory and Appraisement, disclosing the lien against the property. Furthermore, even if petitioner had no knowledge of the lien until the third party settlement, she still took no action against [Mr. Jawork] under what was then the still-pending disposition of her property rights under the divorce action.

The court went on to conclude:

Given petitioner's failure to take appropriate action before [the] July 23rd order (which, in effect could even be seen as petitioner's tacit agreement to assume satisfaction of the lien), this Court sees no reason why it should now extend itself to grant her the unusual relief she seeks. The proper method to escape from paying the lien would have been to request an inventory and appraisement after the third party settlement as well as a delay of the entry of the July 23rd order, or to have immediately filed a Petition for Special Relief under § 403(d) against defendand [sic] alleging fraud.

■  We disagree with the trial court's decision. While it may have been more desirable for Mrs. Eisele to have brought the problem to the attention of the court immediately after settlement, we do not agree that her failure to do so should be fatal to a determination of the issue she raised in her petition. There is no fixed and firm procedure for requesting the relief she sought, nor is there a definite time period prescribed during which she had to assert the rights she claimed or be deemed to have waived them. To decline to address her substantive claim merely because the court would have preferred alternative procedural handling constitutes an abuse of discretion, especially where no prejudice has been claimed or shown.

In her petition for special relief Mrs. Eisele averred that her ex-husband had long been uncooperative in addressing or resolving the remaining claims in the divorce action. We do not know whether the agreement they reached whereby she was to receive the house was written or oral, but it is fair to infer that when she made it she was unaware of the lien but that Mr. Jawork knew it had been entered. She is certainly chargeable with notice of the lien at least as soon as the date of the title report. However, it may well have been futile for her to insist on a resolution of the lien prior to settlement. In fact, to do so may have cost her the sale, if Mr. Jawork refused to cooperate.

It is also conceivable that Mrs. Eisele believed, perhaps not incorrectly, that she had no firm recourse concerning her right to the entire interest (unencumbered, of course) in the house for which she had bargained *until* the court entered its order confirming that distribution. She had no way of knowing when that would be and, from her point of view, she was protected in the meantime because the disputed amount was in escrow. When the equitable distribution order was entered in late July 1986, her petition was filed almost immediately thereafter. She did not sit on her rights.

We find it to be an abuse of discretion for the trial court to have focused entirely upon its view of the correct timing

and procedure that should have been followed to the exclusion of the merits of Mrs. Eisele's position. The Divorce Code has as one of its purposes to "effectuate economic justice between [the] parties ... and insure a fair and just determination and settlement of their property rights," 23 P.S. § 102(a)(6). To have ruled as the trial court did for the reasons it cites is contrary to the legislature's clearly expressed intent.

■ For the foregoing reasons, we reverse and remand for a determination on the merits. The trial court should take into consideration, inter alia, the spirit of the parties' agreement, any concealment of the lien on Mr. Jawork's part during the negotiation of the agreement, and the purposes of our Divorce Code in deciding whether or not it is equitable and proper under section 403(d) to charge Mr. Jawork with the ultimate responsibility for the encumbrance and to require that he satisfy the lien. Jurisdiction is relinquished.