David E. JOHNSON, Appellee,

v.

Pamela JOHNSON, N/K/A Pamela K. Blesh, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 7, 2004.

Filed Dec. 21, 2004.

Janice R. Yaw, Williamsport, for appellant.

Richard J. Callahan, for appellee.

Before: FORD ELLIOTT, BECK and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Pamela Blesh (Wife) appeals the order that granted Appellee Donald E. Johnson's (Husband) petition for special relief from the existing equitable distribution agreement entered on March 26, 2004, in the Court of Common Pleas of Clinton County. Upon review, we reverse.

¶ 2 The relevant facts and procedural history of this case are as follows: The parties were married on August 18, 1966. After 17 years of marriage, the parties separated in August of 1983. A divorce decree was entered on May 24, 1985. Husband is currently 63 years of age and remarried, and Wife is 60 years of age and has not remarried.

¶ 3 Following entry of the divorce decree, the trial court adjudicated the economic issues attendant to the divorce. Thereafter, on March 19, 1986, the trial court entered an order of equitable distribution of the marital estate, supplemented by findings of fact and conclusions of law. The equitable distribution order provided for a division of the marital estate which allowed Husband to retain his mill business, Clintondale Mills, while making monthly installment payments of Husband's equitable distribution debt to Wife. Husband was to pay Wife $385,381.00, plus 10% interest, in monthly installments that exceeded $4,000.00. Despite Wife's request, the trial court did not award her alimony or alimony *pendente lite*. Husband, however, was required by the order to pay $5,000.00 toward Wife's attorney's fees.

¶ 4 Husband made payments to Wife pursuant to the March 19, 1986 order until June 1993, whereupon Husband discontinued payment to Wife due to the failure of his mill business. Numerous petitions to enforce the equitable distribution payment schedule and petitions for contempt were filed by Wife. Thereafter, on March 1, 1995, the trial court entered an order that set a new payment schedule of the balance of the money Husband owed Wife, which, at that time, was agreed by the parties to be $304,944.18. The March 1, 1995 payment schedule required that Husband sell certain assets to pay the equitable distribution debt owed to Wife; until these assets were sold, Husband was to pay Wife monthly installment payments of $2,000.00. The trial court characterized this monthly installment as "alimony." However, the payments were to be treated as a reduction of the equitable distribution debt and were to be treated without tax consequence to either Husband as payor or Wife as payee. *See* Trial court order, 3/1/1995, at 2–3 (unnumbered).

¶ 5 After the trial court entered its order, Husband filed for bankruptcy protection pursuant to Chapter 7 of the United States Bankruptcy Code, Title 11 U.S.C. § 101, *et seq.* In an effort to avoid having the existing equitable distribution debt discharged in bankruptcy, Wife filed a "petition to establish alimony," which the trial court denied. Wife appealed to this Court, and we affirmed the trial court's denial of her petition. *See Johnson v. Blesh,* 910 HBG 1995 (Pa.Super. filed 11/20/1996) (unpublished memorandum).

¶ 6 The docket remained silent in this case until September 6, 2000, whereupon Husband's bankruptcy petition was dismissed by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. Thereafter, on November 21, 2001, Wife filed a petition for contempt/enforcement of the March 1, 1995 equitable distribution order. Husband did not respond to the petition and, on January 9, 2001, was found in contempt of court and incarcerated in Clinton County Prison. In turn, Husband filed a motion for bail. The trial court did not address this motion, but, on January 16, 2001, it rescinded its contempt order of January 9, 2001, released Husband from Clinton County Prison, and issued a rule to show cause why Husband should not be held in contempt of court, returnable on January 30, 2001.

¶ 7 On March 20, 2001, following a hearing, the trial court found Husband in contempt and ordered him to be incarcerated for six months in Clinton County Prison. The trial court's contempt order also indicated that he could purge himself of the contempt by paying a lump sum of $20,000.00 to Wife within 45 days of the date of the order. The order also required Husband to pay Wife "alimony" in the amount of 40% of his net weekly income or $326.00, whichever was greater. These "alimony" payments were to be collected through wage attachment by the Domestic Relations Office of Clinton County. As before, these "alimony" payments were to be used as payments toward Husband's equitable distribution debt to Wife. The trial court also ordered Husband to pay Wife's attorney's fees associated with the filing of the contempt petition.

¶ 8 On March 29, 2001, following Wife's motion for reconsideration/clarification of the trial court's March 20, 2001 order, the trial court clarified the order to indicate that the "alimony" payments would not be taxable to the payee or deductible by the payor and that, in the case of the death of Husband, the balance remaining from the equitable distribution debt would be a debt of Husband's estate.

¶ 9 Husband did not pay Wife's attorney's fees as ordered, and, therefore, on June 19, 2001, Wife filed another petition

for contempt. Thereafter, Wife withdrew the petition for contempt because Husband paid her attorney's fees *via* credit card.

¶ 10 The docket fell inactive until November 21, 2003, whereupon Michael Angelelli, Esquire, attorney for the Domestic Relations Office of Clinton County, informed the trial court that Husband, despite his wage attachment, was not making full payment on his equitable distribution debt, which had been characterized as "alimony." Therefore, on November 24, 2003, the trial court issued a rule to show cause why Husband should not be found in contempt. The rule was made returnable at a hearing to be held on December 16, 2003.

¶ 11 The hearing was not held on December 16, 2003, due to Husband's appointment with a doctor regarding his impending heart surgery.[1] Therefore, the hearing was continued to February 3, 2004. Husband failed to appear at the hearing on February 3rd, and the trial court continued the hearing to February 12, 2004.

¶ 12 The contempt hearing did not take place because Husband paid the accrued arrearages to the Domestic Relations Office, and, therefore, the Domestic Relations Office withdrew its contempt petition. However, on February 12, 2004, Husband filed a motion for modification of the trial court's order of March 20, 2001. Husband alleged that his income had dropped precipitously since 2001, and he was in need of relief from the March 20, 2001 order because he could not work to generate more income to pay his equitable distribution debt due to his health problems.[2] The

trial court treated this motion as a motion for special relief pursuant to Pa.R.Civ.P. 1920.43, and it scheduled a hearing on the motion for March 11, 2004. Wife, in turn, requested that the motion for special relief be dismissed by the trial court, and she filed a memorandum in support of her request.

¶ 13 The trial court conducted the hearing on Husband's petition on March 11, 2004, and all parties attended the hearing. Thereafter, on March 26, 2004, the trial court granted Husband's motion for special relief and authorized the Clinton County Domestic Relations Office to attach 40% of Husband's income as payment toward his equitable distribution debt, which is currently $227,084.02. On April 26, 2004, Wife filed a timely notice of appeal to this Court.[3] The trial court ordered Wife to file a concise statement of matters complained of on appeal, and she complied. The trial court authored an opinion that addressed Wife's matters.[4]

¶ 14 Wife raises the following issues for our review:

1. Whether the trial court erred by granting [Husband's] motion [for special relief regarding] the equitable distribution award when the trial court had no jurisdiction to [disturb] a final equitable distribution order[?]

2. Whether the trial court erred by [granting Husband's motion for special relief] when [Husband] received the full benefit of the equitable distribution award, did not pay [Wife,] and the [granting of the motion for

---

1. Husband's heart surgery was to take place on December 29, 2003.

2. Husband's only personal income since that time has been Social Security Income (SSI), in the amount of $1,209.00 per month.

3. We note that the 30th day after March 26, 2004, was April 25, 2004, a Sunday, and,

therefore, was excluded from the computation of time for the 30–day appeal period. *See* 1 Pa.C.S.A § 1908. Therefore, Wife's appeal, filed on April 26, 2004, was timely.

4. Husband did not file an advocate's brief in this case.

special relief] by the trial court makes it impossible for [Wife] to [receive] her full award within her lifetime[?]

3. Whether the trial court erred in its reliance on equitable principles [in granting the motion for special relief] when [Husband] received his full equitable distribution award, dissipated the sums owed to [Wife,] and has now placed his remaining assets into tenants by the entireties property to avoid payment of [Wife's] equitable distribution share[?]

Appellant's brief, at 6.

 ¶ 15 We consider first whether the trial court had jurisdiction to entertain Husband's motion for special relief. The question of whether a tribunal had jurisdiction to entertain a matter presents an appellate court with a pure question of law, as such, our standard of review is *de novo,* and our scope of review is plenary. *See Commonwealth v. John,* 854 A.2d 591, 593 (Pa.Super.2004) (citation omitted).

¶ 16 Generally speaking, a trial court loses jurisdiction to modify a final order 30 days after entry of the order or after an appeal has been filed. *See* 42 Pa.C.S.A. § 5505; *see also* Pa.R.A.P. 1701. Nevertheless, in *Romeo v. Romeo,* 417 Pa.Super. 180, 611 A.2d 1325 (1992), this Court found an exception existing in the Divorce Code and the Rules of Civil Procedure to the aforementioned jurisdictional principle. In *Romeo,* Lana K. Romeo (wife) sought to file a "motion to modify" certain aspects of an equitable distribution scheme incorporated into the final divorce decree that divorced her from her former husband, Michael J. Romeo (husband). *See Romeo,* 611 A.2d at 1326. Wife filed the "motion to modify" some eight months after the final decree was entered.[5] The trial court

granted wife's "motion to modify," and husband appealed. *Id.,* 611 A.2d at 1326.

¶ 17 On review, we concluded that the trial court had jurisdiction to entertain wife's motion. *Romeo,* 611 A.2d at 1327–1328. A unanimous Court held as follows:

The Divorce Code makes no provision for a "modification" of a final decree of equitable distribution, and in fact it is settled law that such a decree is nonmodifiable. The Code provides, however, that

[t]he courts shall have original jurisdiction in cases of divorce ... and shall determine, in conjunction with any decree granting a divorce ... the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, *and may retain continuing jurisdiction thereof:*

(1) The determination and disposition of property rights and interests between spouses.

23 Pa.C.S. § 3104(a)(1) [formerly 23 P.S. § 301(a)(1)] (emphasis added).

* * *

[Further], we note that [Pa.R.Civ.P.] 1920.43 provides for the filing of a petition for special relief, as follows:

(a) At any time after the filing of the complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,

(1) issue preliminary or special injunctions necessary to prevent the removal, disposition, alienation or encumbering of real or personal property [...]; or

611 A.2d at 1327.

---

5. The parties in *Romeo* did not file an appeal to this Court from the final decree. *Romeo,*

(2) order the seizure or attachment of real or personal property; or

(3) grant other appropriate relief.

[Pa.R.Civ.P.1920.43(a)].

The granting of such relief is an exercise of the trial court's equitable powers. *Jawork v. Jawork,* 378 Pa.Super. 89, 96, 548 A.2d 290, 293 (1988). This Court has held that "petitions for special relief are not limited to the period when an action is pending[,]" since "[i]t is easily conceivable that, after the final disposition of all matters in the divorce action, a party may need the assistance of the court in enforcing some portion of its order." *Id.,* 378 Pa.Super. at 94 n. 6, 548 A.2d at 292 n. 6.

*Romeo,* 611 A.2d at 1327–28.

¶ 18 Therefore, our Court concluded that the trial court entertained her motion properly as a petition for special relief pursuant to Pa.R.Civ.P.1920.43, despite the fact that eight months had passed since entry of the decree that established the equitable distribution scheme. *Romeo,* 611 A.2d at 1328; *see also Wagoner v. Wagoner,* 538 Pa. 265, 272–73, 648 A.2d 299, 302–03 (1994) (trial court has authority to grant special relief regarding final equitable distribution scheme where fairness dictates reexamination of circumstances dividing marital property of parties). Accordingly, applying *Romeo* to the present case, it is clear that the trial court had jurisdiction to entertain Appellee's petition although the equitable distribution scheme was final. *Romeo,* 611 A.2d at 1328. Therefore, Appellant's argument fails.

¶ 19 We address Wife's second and third issues jointly as they present the same issue for our review. Essentially, Wife argues that the trial court abused its discretion in its application of equitable principles when it granted Husband's petition for special relief. Our review of this issue is governed by an abuse of discretion standard. *See Romeo,* 611 A.2d at 1328. An abuse of discretion has been explained by the appellate courts of this Commonwealth as more than an error in judgment; we may find an abuse of discretion only on clear and convincing evidence that the trial court misapplied the law or overrode it or that the judgment reached was manifestly unreasonable, or based on bias, ill-will, or partiality. *See Bowser v. Blom,* 766 A.2d 1259, 1260–61 (Pa.Super.2001).

¶ 20 At the outset, we note that the payment scheme established originally by the order of March 1, 1995, and modified thereafter by the orders of March 29, 2001, and March 26, 2004, *does not constitute* an "alimony" payment scheme, and the trial court was incorrect for designating the payment scheme as such. "Alimony" is a payment of support by one former spouse following divorce made to meet needs of the other former spouse who is unable to support himself or herself through appropriate employment. *See Miller v. Miller,* 744 A.2d 778 (Pa.Super.1999). For federal taxation purposes, alimony is income to the recipient and constitutes a deduction to the payor. *Isralsky v. Isralsky,* 824 A.2d 1178, 1190 (Pa.Super.2003). On the other hand, an order of equitable distribution, from where the debt-at-issue has its genesis, is merely an equitable division of marital property between spouses and does not constitute "income" to either party. *In re Trust Under Agreement of John H. Ware III,* 814 A.2d 725, 738 (Pa.Super.2002); *see Ouzts v. Ouzts,* 576 A.2d 1143 (Pa.Super.1990) (receipt of equitable distribution payment not income).

¶ 21 The present payment scheme is, in reality, an order of "equitable reimbursement." The concept of "equitable reimbursement" is a judicially-created doctrine whereby a payor spouse pays installment payments to the payee spouse in

reimbursement for the payee's spouse's contribution to the marriage, where the existing marital assets, if equitably distributed, would be insufficient to compensate the payee spouse for his or her contribution to the marriage. *See Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020, 1023–24 (1995); *see also Wagoner,* at 270–72, 648 A.2d at 302–03. That is not exactly the case here, because the value of the existing marital assets at the time of divorce were sufficient to pay Husband's equitable distribution debt, but the trial court structured the equitable distribution order in an effort to maximize the value of the distribution to both parties. Nevertheless, the March 26, 2004 order currently on review is characterized properly as an order of equitable reimbursement because Husband's current individual assets are insufficient to pay his outstanding equitable distribution debt.

¶ 22 As stated above, a petition for special relief is an appeal to the equitable powers of the trial court. *See Romeo,* 611 A.2d at 1327–28. The maxim, "equity abhors a forfeiture," is as ancient as the concept of equity itself and guides our disposition in the present case.

¶ 23 The record indicates that Husband was permitted by the original March 19, 1986 equitable distribution order to retain the major asset of the marital estate, 1,500 shares in Clintondale Mills, then valued by the trial court at $209,000.00, and was to pay Wife her portion of that asset, with interest, over a fifteen-year period. However, Clintondale Mills failed in the early 1990's, and Husband lost most of the property obtained as a result of equitable distribution from which he could pay his remaining equitable distribution debt. Thereafter, in 1995, Husband sought bankruptcy protection and, through the protec-

tion of the automatic stay, did not make a single payment to Wife until after his bankruptcy case was dismissed in 2000, and after he was jailed for contempt in 2001. To this date, Husband still owes Wife $227,084.82. Therefore, for more than 18 years, Wife has been without most of the value of the marital property allotted to her in the equitable distribution order.

¶ 24 The trial court's equitable reimbursement order of March 26, 2004, required Husband to pay 40% of his current monthly income (now $1209.00) to Wife. Thus, utilizing Husband's current income as a guide, if compliant with the order, Husband would pay Wife $483.60 (40% of $1,209.00) for approximately 39 years ($227,084.02/$483.60 = 470 months/12 = 39.16 years). Therefore, at that rate, Husband will be 102 and Wife will be 99 when she receives the full value of her marital property.[6] If Husband died prior to fulfilling his equitable distribution obligation, his equitable distribution debt will be borne by his estate. However, the lion's share of Husband's current assets is comprised of property held as tenants-by-the-entireties with his current wife. *See* N.T. Hearing, 3/11/2004, at 7–9. Therefore, ownership of the property will pass immediately to Husband's current wife if he predeceases her and may be protected from Wife's incursion. *See Fazekas v. Fazekas,* 737 A.2d 1262, 1264 (Pa.Super.1999) (when one spouse dies, spouse owning property jointly as tenant-by-entireties does not take a new estate; surviving spouse becomes sole owner); *see also Patwardhan v. Brabant,* 294 Pa.Super. 129, 439 A.2d 784 (1982) (absent fraud, entireties property is unavailable to satisfy claims of creditor of only one tenant).

---

**6.** We note that Husband, on the other hand, retained his entire portion of the marital estate in 1986.

¶ 25 Accordingly, due to the age at which Wife will receive the full portion of her marital property, and the substantial possibility that Husband's estate could avoid all liability for his equitable distribution debt, the trial court's March 26, 2004 order is, for all practical purposes, a forfeiture. As such, we are constrained to conclude that the trial court erred when it granted Husband's petition for special relief. *Cf. Kalina v. Eckert*, 345 Pa.Super. 220, 497 A.2d 1384, 1385 (equity abhors forfeiture and is, therefore, hesitant to enforce forfeiture). Accordingly, we must reverse its order.[7]

¶ 26 Order reversed. Case remanded. Jurisdiction relinquished.

---

7. We recognize that our reversal of the trial court's order will place the parties in the same position that they existed in as a result of the trial court's previous March 20, 2001 order, which was not appealed to this Court and, therefore, cannot be disturbed by this Court. Nevertheless, the precise question presented to this Court was whether the trial court abused its discretion when it applied equitable principles to grant Husband's petition for special relief. We conclude that it did, and, therefore, we are bound to reverse its order.