F. Andrew SMITH, Appellant

v.

Therese A. SMITH, Appellee.

Superior Court of Pennsylvania.

Argued April 12, 2005.

Filed Aug. 4, 2005.

Lynn G. Paterson, Hanover, for appellant.

Timothy J. Shultis, Hanover, for appellee.

Before: DEL SOLE, P.J., JOYCE and KLEIN, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 In this appeal we consider the effect of 24 Pa.C.S.A. § 8101, *et seq.* ("Act 9"), on Commonwealth of Pennsylvania State Employees' Retirement System ("SERS") pensions divided pursuant to the terms of a Qualified Domestic Relations Order. Specifically, we must determine whether a non-participating spouse is entitled to increased benefits received by the participating spouse when the participating spouse elects to receive higher benefits pursuant to Act 9 after the parties' separation.

¶ 2 F. Andrew Smith ("Husband") filed for divorce from Therese A. Smith

("Wife") in 1995. Attendant to the issuance of the divorce decree, proceedings to divide the marital estate were held. An order was entered on July 20, 1998, awarding Wife a substantial portion of Husband's pension.[1] The parties were ordered to prepare a Qualified Domestic Relations Order ("QDRO") to effectuate this provision. This was not accomplished and in 2001, Wife sought a hearing on the matter. A hearing was not held until May, 2004. Meanwhile, Husband retired in 2002. In 2001, prior to retirement, Husband elected to become a Class AA Member, which increased his benefits. This option was created as the result of 24 Pa.C.S.A. § 8101, *et seq.*, passed in 2001, which permitted SERS to offer its participants the opportunity to increase the multiplier used to calculate pension value at retirement. At the 2004 hearing, Wife argued that she was entitled to share in this increase in value. The trial court agreed and re-calculated the marital portion of Husband's pension to include this increase. Husband appealed, and presents the following issues for our review:

A. Was Pensioner's post-separation voluntary election to increase his pension contributions sufficient consideration on his part such that the increased multiplier resulting therefrom accrues to benefit the non-marital portion of the pension?

B. Is a twenty-eight month delay from the order to prepare a Qualified Domestic Relations Order until the first efforts are made to do so sufficient to invoke the doctrine of laches?

C. Should the Court have relied on the higher official position of SERS regarding the value of the pension when SERS expressed two different values using the same multiplier?

D. Is it appropriate to review and change a six-year old equitable distribution scheme simply because a pensioner chooses to return to work and defer the pension payments?

Brief for Appellant at 4.

¶ 3 In reviewing this claim, we are cognizant of the fact that the trial court has broad discretion to fashion an equitable distribution order, and we will not disturb such an order absent an abuse of discretion or error of law. *Diament v. Diament*, 816 A.2d 256 (Pa.Super.2003). However, we are not bound by the trial court's conclusions of law, and we are bound only to those findings of fact supported by the record. *Porreco v. Porreco*, 571 Pa. 61, 811 A.2d 566 (2002).

¶ 4 Section 3501(c) of the Divorce Code provides that a defined benefit plan shall be divided by use of a coverture fraction, and that the coverture fractions shall apply to all post-separation enhancements, except for those that are the result of post-separation monetary contributions of the contributing spouse. 23 Pa.C.S.A. § 3501(c). Presently, Wife argues that the increase received by Husband was not the result of such efforts, and must be included in the coverture fraction. We cannot agree.

¶ 5 Examining the record, it is clear that coupled with the Class AA election was an increase in pension contributions. Husband's Class AA Election form contained two boxes; one to mark in order to opt in to the class, the other to mark to opt out. The opt-in box specifically states that by electing to become a member of the AA Class, the participant's contribution rate will increase, from 5% to 6.25%, beginning with the first pay of January,

---

1. Husband was employed by the Pennsylvania Department of Corrections from a date prior to the marriage until 2002, when he retired. His pension is through SERS.

2002. The opt-out box specifically states that by not electing to be a Class AA member, the contribution rate remains 5%. We find this compelling evidence that the increased benefits were given in exchange for a participant's increased contributions.

¶ 6 Wife acknowledges the increased contribution; however, she points out that the increased contributions did not take effect until 2002, but the increased benefits were available to a participant in 2001. She argues that because a participant could have elected to become a Class AA member at almost any point in 2001, retired before the increased contributions became effective and reaped the benefits of the increased multiplier, the contributions were in exchange for higher future benefits only, that is, for benefits earned from the date of the first higher contribution forward. We do not agree. First, Wife concedes that the increased multiplier is applied not only to benefits earned after Class AA election, but to Husband's entire pension, excepting military service. Brief for Appellee at 5. Secondly, the fact that a loophole existed which permitted participants to retire with amplified benefits prior to increasing their contributions does not affect our decision here; it was a fleeting opportunity that does not diminish the fact that the situation is a *quid pro quo*—greater benefits for higher contributions. In this situation, where Husband did not retire during that brief period, we find it clear that without providing increased contributions Husband would not be receiving the increased benefits.

¶ 7 In so finding, we reject Wife's argument that the increased benefits were solely the result of an act of legislation, a mere change to the pension plan. While Act 9 did permit the increase, it certainly did not confer benefits on participants without their election and contributions; it was not an automatic increase in benefits, nor an increase that a participant could receive passively, without personal contributions.

¶ 8 We thus conclude that the increased benefits received by Husband as a result of his election to join Class AA were due to his post-separation contributions, and therefore not marital property. For this reason, the trial court erred in increasing the marital portion of Husband's pension. In light of our resolution of this issue, we need not address Husband's second and third issues, and so we move directly to his final issue.

¶ 9 Husband argues that the trial court erred in providing that Wife could petition the trial court for relief should Husband return to work and suspend his pension payments. Husband argues that such proceedings would disrupt the equitable distribution scheme, which was finalized in 1998. We cannot agree. While a trial court generally loses jurisdiction to alter an order thirty days after it has been entered, we have recognized an exception in the Divorce Code. This exception permits the trial court to retain jurisdiction over an equitable distribution matter so as to entertain petitions that arise with regard thereto, even long after the scheme became final. *See Johnson v. Johnson,* 864 A.2d 1224 (Pa.Super.2004). Accordingly, we find no fault with the trial court's statement suggesting that should Husband return to work and suspend his pension payments, Wife may present a petition seeking relief; Wife would be entitled to do so even if the trial court had not stated so explicitly.

¶ 10 Order reversed. Case remanded for reinstatement of the July 20, 1998 Order of Court. Jurisdiction relinquished.