J-S36017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SUSANNE SANDINO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANUEL SANDINO | : | |
| | : | |
| Appellant | : | No. 729 MDA 2024 |

Appeal from the Decree Entered April 25, 2024
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2018-04481

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED: JANUARY 8, 2025**

Manuel Sandino ("Husband") appeals from the divorce decree entered in this case and challenges the equitable distribution award. He disputes the distribution of the pension assets and marital residence and argues the court failed to consider that Susanne Sandino ("Wife") is 10 years younger than he is. We affirm.

In October 2018, Wife filed a complaint in divorce. The trial court appointed a hearing officer to hear the claims of divorce, equitable distribution, and alimony. In July 2023, the hearing officer held a hearing.

In August 2023, the officer issued a report and recommendation. The Hearing Officer's findings of fact included the following:

> The parties have stipulated that the marital assets, and the values thereof, are as set forth in Joint Exhibit 11[. Joint Exhibit 11 lists the following marital property and values: Real estate valued at $303,000; Husband's military retirement valued at $242,931; Husband's FERS retirement

valued at $40,870; Husband's TSP retirement account valued at $19,849.14; a Honda Pilot valued at $2,768; a Passat valued at $3,062; stocks in the amount of $831.70; and Wife's 401(k) valued at $72.02. The exhibit further showed a mortgage on the real property in the amount of $160,361.43.] The total net value of the marital estate, after accounting for the remaining marital mortgage, is $453,022.43.

This does not include stocks that Husband received from either his mother or his father. The evidence is conflicting and unclear as to which parent gave these stocks to Husband. However, either way it appears that the stocks were a gift or inheritance to Husband. Furthermore, there is no evidence of the value of these stocks, and no way to properly account for their value as part of the marital estate. We do note, however, that these stocks will be another reason that Husband will be able to recover from the economic consequences of this divorce faster than Wife.

. . .

Husband has stocks that he received from his mother that have generated at least $50,000 in dividends since 2008. There is no evidence about the current value of these stocks. Husband also has approximately $250,000 of non-marital retirement assets.

Hearing Officer's Report and Recommendation Under Pa.R.C.P. 1920.53(c) and 1920.54, Aug. 30, 2023, at 8 ("Report and Recommendation").

The Hearing Officer also discussed the factors affecting distribution and made the following findings:

1. *The length of marriage.* The parties were married on August 23, 2003 and finally separated on November 14, 2018. Thus[,] the length of the marriage was approximately 15 years.

2. *Any prior marriage of either party.* This was the first marriage for both parties.

3. *The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs*

*of each of the parties.* Husband is 50 years old. He earns at least $103,000 per year through his employment with the Federal Government and the National Guard. He has a separate estate that he received as a gift from his family, and he has significant non-marital retirement savings.

Wife is 39 years old. She works as a caregiver for elderly people, earning $15 per hour. She has primary custody of the children. She has no separate estate.

4. *The contribution by one party to the education, training or increased earning power of the other party.* There was no evidence of this factor. Although Wife started a real estate class before separation, she did not finish it.

5. *The opportunity of each party for future acquisition of capital assets and income.* Husband has a substantially greater opportunity for future earning potential. He has an established career in which he makes more than $100,000 per year. He also has stocks that he received from his mother, as well as the non-marital portion of his retirement accounts. Wife has a high school education and has never earned more than $15 per hour. She also has the primary responsibility for raising the children.

6. *The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.* The primary source of income for both parties is their incomes. Husband has the aforementioned stocks, which produce periodic dividends. Husband also has significantly more retirement savings than Wife.

7. *The contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation of the marital property, including the contribution of a party as homemaker.* Both parties contributed equally to the acquisition of assets in this marriage. Husband worked and furthered his career, while Wife served as primary homemaker and also contributed through various jobs outside the home.

8. *The value of the property set apart to each party.* Please see Paragraph F below.

9. *The standard of living of the parties established during the marriage.* The parties established a middle class standard of living.

10. *The economic circumstances of each party, at the time the division of property is to become effective.* Husband is in a better position to maintain the parties' standard of living, based on his job and his accumulated assets.

10.1 *The federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain*. N/A

10.2 *The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.* There will be expense in refinancing the marital residence, and in preparing a [qualified domestic relations order] to divide retirement assets.

11. *Whether the party will be serving as the custodian of any dependent minor children.* According to the evidence presented at trial, Wife has primary custody of the children. For this reason, the Court has previously restricted her from moving out of the Greencastle area. This limits her employment options.

*Id.* at 6-10.

The Hearing Officer recommended that the court divide the assets such that Wife would receive 62% of the marital assets ($280,873.91) and Husband would receive 38% ($172,148.52). The Officer stated that this would avoid alimony and would account for the "significant difference in the economic condition of the parties." *Id.* at 11. The Officer also reasoned the distribution would allow for Wife "to meet her obligation of remaining in Greencastle pursuant to the Custody Order." *Id.* The Officer concluded that the distribution would be "achieved by dividing the assets as" follows: Wife would receive the marital residence, her $72.02 in retirement assets, the Honda vehicle,

$40,0870 of Husband's FERS retirement account, and $19,849.14 of Husband's TSP marital account; Husband would receive $242,931 of his military retirement account, a Volkswagen Passat, and $831.70 in stocks. Following this distribution, in order to achieve the 62%/38% distribution, the hearing officer recommended that Husband make equitable distribution payments to Wife in the amount of $74,676.18, at the rate of $1,000 per month for 75 months. *Id.* The Hearing Officer also recommended that Wife be required to refinance the house into her name and be solely responsible for the remaining mortgage debt. *Id.*

Husband filed exceptions, arguing:

> 1. The Divorce Hearing Officer erred in dividing the estate in such a way that [Wife] receives all the liquid assets but [Husband] was awarded a non-liquid asset (a pension) which he will not be able to access for at least ten years.
>
> 2. The Divorce Hearing Officer erred in making a recommendation that not only gives all the liquid assets to [Wife] but requires [Husband] to pay $74,000.00 cash to [Wife] as equitable distribution over a period of time; no consideration was given if [Husband] becomes disabled or dies prior to these monies being paid.
>
> 3. The Divorce Hearing Officer erred in skewing the distribution as heavily as he did in the [Wife's] favor for a fifteen-year marriage, when [Husband] has been supporting [Wife] since the inception of this case in 2018.

Defendant's Exceptions to Divorce Hearing Officer's Report and Recommendation, filed Sept. 8, 2023. In his brief in support of the exceptions, Husband discussed the cases addressing immediate offset versus deferred distribution of retirement accounts and argued the hearing officer erred in

recommending Husband pay $74,000 over six years because this resolution had none of the advantages of immediate offset and had the disadvantages of a differed distribution. Defendant's Brief On Exceptions, filed Oct. 13, 2023, at 6-8.[1]

The court heard argument. In December 2023, the court overruled the exceptions and approved the report and recommendation. The court granted a divorce decree in April 2024, and Husband filed a timely notice of appeal.[2]

Husband raises the following issues:

> 1. Did the Court err in utilizing an immediate offset distribution method rather than a deferred distribution method, in ordering that Husband pay $74,000.00 cash to Wife as equitable distribution over a period of time with no consideration of Husband's possible disability or death prior to payment, and basing the award of the house to Wife on an expectation that Wife will qualify to refinance the mortgage without any credible evidence that she can do so?
>
> 2. In skewing the distribution heavily in Wife's favor, was insufficient weight put on the fact that Wife is ten years

---

[1] The brief is not in the certified record. The docket shows that a brief was filed, and the brief is included in the reproduced record. Docket, Case No. 2018-04481 (On Oct. 19, 2023 stating "Defendant's Brief on Exceptions Filed with Copies Returned to Atty Hawbaker"). No party states that it is not accurate, and we therefore will rely on the brief included in the reproduced record. **See Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (where request to make documents part of certified record was granted, but document was not included in the certified record, court could consider the copy in the reproduced record where accuracy was not disputed).

[2] Husband initially appealed following the order overruling his exceptions and approving the report and recommendation. We quashed that appeal because the court had not entered a divorce decree. Husband filed a timely appeal after entry of the divorce decree.

younger than Husband, and that the parties had a fifteen-year marriage?

Husband's Br. at 10 (suggested answers omitted).

This Court reviews "a challenge to the trial court's equitable distribution scheme for an abuse of discretion." **Hess v. Hess**, 212 A.3d 520, 523 (Pa.Super. 2019). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." **Id.** (quoting **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa.Super. 2018)). A court has not abused its discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Id.** (quoting **Carney v. Carney**, 167 A.3d 127, 131 (Pa.Super. 2017)). When reviewing an equitable distribution award, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Id.** (quoting **Hayward v. Hayward**, 868 A.2d 554, 558 (Pa.Super. 2005)).

"We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S. § 3502(a) factors for consideration in awarding equitable distribution." **Id.** (quoting **Harvey v. Harvey**, 167 A.3d 6, 17 (Pa.Super. 2017)) (citation and internal brackets omitted). Moreover, we will not reverse a trial court's credibility determinations where they are supported by the record. **Id.** (citation omitted).

- 7 -

Husband first argues that the trial court abused its discretion and misapplied the law in utilizing an immediate offset distribution method rather than a deferred distribution method for his pension plans. He maintains "the immediate offset distribution resulted in Husband receiving mainly deferred assets and having to make equitable distribution payment to Wife." Husband's Br. at 17. He claims the court failed to consider that he may die or become disabled. He further argues the court erred "by basing this distribution in awarding the house to Wife on an expectation that Wife would qualify to refinance the mortgage that is solely in Husband's name without any credible evidence that she can do so." *Id.* Husband maintains the court "failed to consider the real possibility that Wife might not qualify to refinance the mortgage due to her limited earnings, the termination of APL, and child support of the children who have or will become emancipated in the next few years." *Id.* at 24.

Husband argues the court erred in ordering that he pay $74,000 to Wife over a six-year period and only awarding him non-liquid assets. He points out that Wife had been receiving $561.92 a month in APL, in addition to child support. He argues the equitable distribution award "essentially [gives] her almost twice as much in equitable payments as she was receiving in APL." *Id.* at 19. He discusses the immediate offset and deferred distribution methods for distributing retirement accounts. He notes that immediate offset is preferred because it avoids further entanglement between the parties, but argues that "[w]hen the value of the employee spouse's pension far exceeds

- 8 -

the value of the other marital property, the deferred distribution method must be used." *Id.* at 20 (quoting **Braderman v. Braderman**, 488 A.2d 613, 620 (Pa.Super. 1985)) (emphasis omitted). He claims that, here, "the equitable distribution has none of the advantages of an immediate offset and all the disadvantages of a deferred distribution." *Id.* at 21. He argues that "[t]his is clearly a case where the deferred distribution must be used, as Husband's pensions and other retirement assets far exceed the remainder of the marital estate." *Id.* at 22. He claims the more equitable resolution is for "Husband to retain the marital home, to buy out Wife's interest, and for Husband's pensions and other retirement assets to be divided between the parties." *Id.* at 23. He claims this avoids further court intervention once the QDROs are signed and shares the risks of deferred distribution by the parties, and securing retirement assets for Wife.[3]

This Court has recognized there are two methods of awarding a defined benefit pension:

> One method, the immediate offset method, divides the benefits at the time the equitable distribution order is entered by assigning a present value to them. . . . The present value must be multiplied by the "coverture" fraction to reach the present value of the entitlement which was acquired during the marriage. . . . Next, the court must determine how the sum available for equitable distribution should be apportioned between the spouses according to the Divorce Code. After determining the non-employee spouse's interest in the benefits, the court awards these benefits to

---

[3] Wife maintains Husband failed to raise this issue in his exceptions. However, in the brief filed in support of the exceptions, Husband argued the trial court erred in not using the deferred distribution method.

- 9 -

the employee spouse and offsets this by distributing other marital property or by ordering payment to the non-employee spouse.

The second method is labeled the deferred distribution or reserved jurisdiction method, since the court retains jurisdiction and apportions the benefits when they enter pay status or mature. Under this method, present value figures are not used. Rather, the "coverture" fraction is applied to the benefits when they enter pay status since there are too many variables projected into the future.

*Miller v. Miller*, 577 A.2d 205, 208-09 (Pa.Super. 1990) (citation omitted) (alterations in original).

Here, the trial court applied the immediate offset method, using the present value of the retirement accounts, and ordering payment to the non-employee spouse. Report and Recommendation, at Exs. 1, 2, 11. The court also found that the parties had only pension assets and the marital residence, it was reasonable to order a 55%-45% distribution of the pension assets, and Husband could afford the proposed payments:

Husband and Wife clearly have differing economic prospects. This was recognized even by Husband, who proposed a 55%-45% distribution favoring Wife. Determining an equitable distribution in this case is complicated by the fact that the parties have no significant liquid assets. Rather, they have pension assets and the marital residence.

The pension assets are worth substantially more than the net value of the marital residence. Therefore, awarding the residence to one party does not preclude completing a distribution by allocating pension assets. Husband unreasonably blocked Wife's purchase of alternative housing in Greencastle. It is therefore equitable for Wife to be awarded the marital residence in Greencastle, so she may remain in the school district for the benefit of the children and as required to by the custody court.

The remainder of the distribution must then be of pension assets, as those are all that remain. It is equitable to award the military pension to Husband and the civilian pensions to Wife. This results in a 55% distribution of assets favoring the Husband, which must be offset via payments from Husband to Wife. The proposed payments are not unaffordable by husband, as they are the same as the APL payments and child-support payments Husband already is making.

Trial Court Opinion ("Tr.Ct.Op."), filed Oct. 15, 2023, at 13 (citations to record omitted).

In addition, the trial court concluded that Husband pointed to no law requiring a court to consider the possible death or disability of a party and that courts have ordered periodic equitable distribution payments when assets cannot be divided evenly at the time of the equitable distribution award:

Husband raised an exception asserting no consideration was given as to whether he becomes disabled or dies before the equitable distribution moneys are paid. Husband points to no case law or statute that requires the Court give consideration to possible future death or disability. No evidence was presented at trial as to Husband's death or disability being likely.

Periodic equitable distribution payments are payments ordered when assets cannot, for whatever reason, be divided evenly at the time of the equitable distribution award. *See e.g. Wagoner v. Wagoner*, [648] A.2d 299, 302 (Pa. 1994) (distributing pension assets); *In re Ware*, 814 A.2d 725, 733 (Pa. Super. 2002) (distributing income from a family trust); *Johnson v. Johnson*, 864 A.2d 1224, 1230 (Pa. Super. 2004) (distributing value of stock retained by one party). Such payments are a debt owed by the payor spouse to the payee spouse. *Johnson*, 864 A.2d at 1230. Like any other debt existing at the time of death, if Husband continues to owe an equitable distribution debt to Wife, then the debt would be the responsibility of Husband's estate. *Id.* The exception related to death or disability is without merit.

- 11 -

*Id.* at 11-12 (footnote omitted and citation to record omitted).

The trial court did not abuse its discretion. There is no requirement that the immediate distribution amount be used only where the amount can be paid at the time of the award. The periodic payments assured the equitable distribution of the marital assets. Further, the court did not err in awarding Wife the marital residence, and, based on the report and recommendation, it was aware of her financial assets when doing so.

Husband next argues that the trial court "placed insufficient weight on the fact that Wife is 10 years younger than Husband and that the parties had a relatively short-term marriage of fifteen years, when skewing the distribution heavily in Wife's favor." Husband's Br. at 18. He claims that by skewing the distribution toward Wife, the trial court "did not hold her to a full-time earning capacity or consider that she is more than ten (10) years younger than Husband and has more potential years of employment ahead of her." *Id.* at 25. He claims Wife is willfully underemployed, as she has not looked for higher paying jobs and turns down extra shifts. He notes the children are teenagers and claims Wife does not need the flexibility of the job like she once did.

The trial court concluded that although Wife is 10 years younger than Husband, Husband failed to establish how Wife would be able to use those years to achieve Husband's earning capacity or acquire non-marital assets:

> Husband's income is in excess of $100,000. Husband has non-marital assets that pay significant dividends. Husband also has significant marital and non-marital retirement

savings. Wife has a limited education. Wife has never earned more than $15 per hour. Wife has primary responsibility for care of the children, and will continue to have that responsibility for at least six more years.

Husband argues Wife has 10 years of additional earning capacity due to their age-difference. While true, Husband asserts no mechanism whereby Wife could use those years to approximate Husband's earning capacity or acquire similar non-marital assets. Additionally, Wife will need to function as primary custodian to the minor children for at least six of those 10 years. Her ability to work is hampered by the need to provide day-to-day care for the children.

This factor favors Wife. The Hearing Officer's conclusion that Husband has a substantially greater opportunity for future earning potential is supported by the record.

Tr.Ct.Op. at 6-7 (footnotes and citations to record omitted).

The court did not abuse its discretion. Although Wife is 10 years younger than Husband, she does not have his earning capacity, and she will not be able to achieve it, particularly as she is primary custodian for the parties' children and does not have non-marital assets.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/08/2025

- 13 -