J-A07005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| W.R.K., III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.A.K. | : | No. 1253 WDA 2016 |

Appeal from the Order Entered July 22, 2016
In the Court of Common Pleas of Butler County
Civil Division at No(s):  FC No. 13-90268-C

BEFORE:   OLSON, STABILE, and STRASSBURGER[*], JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 09, 2017**

W.R.K., III, ("Father"), appeals from the order dated July 19, 2016, and entered on July 22, 2016, which denied his request for sole legal and physical custody of his two children, M.W.K., a male born in November of 2008 who has autism; and E.M.K., a female born in April of 2010 ("the Children").   The order also denied Father's petition to hold C.A.K., the Children's mother ("Mother"), in contempt of the custody order entered June 30, 2015.   The order, however, granted Father partial relief by prohibiting Mother from raising pet rats in her household or where the Children would

_____

[*] Retired Senior Judge assigned to the Superior Court.

have access to them.  The order also appointed a guardian *ad litem* ("GAL")

to represent the Children.[1]  We affirm.

The trial court set forth the factual background and procedural history

of this appeal in its opinion entered on June 30, 2015, which we adopt

herein.  **See** Trial Court Opinion, 6/30/15, at 1-17.  The relationship

between the parties has been contentious, and Mother has obtained

Protection From Abuse ("PFA") orders against Father on numerous

occasions.  **Id.** at 1-3.  On August 27, 2013, the trial court entered an

amended and continued temporary PFA order, removing the Children as

protected parties.  **Id.** at 2.  In an order entered on August 27, 2013, the

trial court set forth the parties' agreement for shared physical custody of the

Children on a week on, week off basis, and required the parents to

communicate electronically via Our Family Wizard.  **Id.**  The order also

scheduled a review conference.  **Id.**  Father filed a complaint for divorce on

September 18, 2013.[2]  **Id.**  On September 23, 2013, Father filed a complaint

for custody.  Trial Court Opinion, 6/30/15, at 2.

On March 3, 2014, after a review conference, the trial court entered an

order requiring the parties to continue with shared physical custody on a

_____

[1]   Currently, there is no challenge to the trial court's decision to banish pet
rats from Mother's home or for the appointment of the GAL.

[2] There is no evidence of record showing that a divorce decree has been
entered.

weekly basis, and setting forth the holiday schedule. *Id.* at 3. In the March 3, 2014 order, the trial court directed the parties to continue with their individual counseling and begin joint counseling sessions with Brian Dick, M.A., L.P.C. *Id.* The court also ordered the parties to follow the recommendations of Mark Snyder, M.A., and to begin the approval process at AERI Behavioral Health Services for M.W.K.'s autism treatment. *Id.*

On April 17, 2014, by agreement of the parties, the trial court dismissed the PFA order. *Id.* at 3. Moreover, the parties reached an agreement to continue the custody schedule from the March 3, 2014 order, Father was to undergo mental health evaluations and to follow any recommendations, the parents were to continue to use Our Family Wizard, and Mother's right to file another PFA petition against Father was preserved if necessary. *Id.* at 3-4. The parties participated in a review conference with the custody conciliator on June 2, 2014. *Id.* at 4. On June 6, 2014, the trial court entered an order requiring the parties to continue with shared custody on a weekly basis, to meet with Dr. Bartek and follow his recommendations, and to attend co-parenting counseling at Family Pathways. *Id.* The order also required the parties to continue cooperating with M.W.K.'s treatment and family-based therapy. *Id.* The trial court scheduled another review conference for September 3, 2014. *Id.*

The procedural history continued as follows:

Father filed a [p]etition for [s]pecial [r]elief on July 31, 2014 alleging that [M.W.K.'s autism] treatments had been delayed

- 3 -

due to the inability of the parties to communicate, and requested that the September 3rd review conference be canceled, custody evaluations be ordered and trial be scheduled. A consented-to [o]rder of [c]ourt was issued[,] granting Father the right of first refusal during Mother's work times. The [trial court] did not cancel the review conference.

The parties attended the scheduled review conference on September 3, 2014, after which the [trial court] ordered the continuation of shared custody and the completion of custody evaluations by Dr. Bernstein. The parties were ordered to appear for a [p]retrial [c]onference on January 15, 2015.

A PFA [petition] was filed by Mother on October 29, 2014. Mother did not list the [C]hildren as protected parties. On November 6, 2014, the parties entered into an agreement which was made an [o]rder of [c]ourt. They agreed to only communicate through Our Family Wizard – not via text or any other method of communication unless there was an emergency involving the [C]hildren. They further agreed to resolve future disputes via a civil contempt filing would be the appropriate forum rather than filing another PFA [petition]. A separate [o]rder of [c]ourt was issued on the same day dismissing, by agreement of the parties[,] the October 29, 2014 temporary PFA [order].

The pre-trial conference was held on January 15, 2015, after which Mother's counsel withdrew, and trial was scheduled for the 16th, 17th, and 18th of March, 2015. Mother obtained new counsel, and [j]oint [s]tipulations of [f]act were filed on March 10, 2015.

A custody trial was held spanning three days and ending on March 18, 2015.

*Id.* at 4-5.

On June 20, 2015, the trial court entered a custody order awarding the parties shared legal and physical custody and establishing procedures and schedules with regard to telephone calls with the Children, counseling, school, and holidays.

- 4 -

On February 3, 2016, Father filed a counseled petition for contempt and special relief against Mother, alleging, in pertinent part:

> 5. Said [Existing] Custody Order granted the parties joint legal and physical custody. [] Father is unable to make non-emergency decisions for the health, safety and welfare of the children unilaterally.
>
> 6. [] Mother, by a course of conduct which includes contempt of court and willful and negligent acts of commission and omission, has harmed the [C]hildren, placed [the [C]hildren in danger and placed [M.W.K.] in danger of irreparable harm.
>
> 7. The course of conduct mentioned in paragraph six (6) above includes the following:
>
> > (a)   [E.M.K.] was bitten by [] Mother's pet rat. The bite became infected and she was hospitalized in Children's Hospital in Pittsburgh for two nights.
> >
> > (b)   Mother failed to seek medical attention after the rat bite and failed to notify [] Father of the incident.
> >
> > (c)   Father discovered the bite during his shared custody time and took the child to the hospital himself.
> >
> > (d)   Mother was aware of the dangers of having pet rats, having signed a waiver at the pet store. Despite the known risks to the [C]hildren, Mother still has two pet rats at her residence.
> >
> > (e)   [M.W.K.] is an autistic child. He has been prescribed numerous services by professionals since on or about October of 2014.
> >
> > (f)   Mother failed to take [M.W.K.] to his first grade orientation on September 13, 2015 thereby delaying by a month the services the school is providing for his autism.
> >
> > (g)   Mother failed to appear for an evaluation of [M.W.K.] by Mark N. Snyder, Licensed Psychologist on October

21, 2015. A copy of the evaluation by Mark N. Snyder is attached hereto and made a part hereof.

(h) [] Mother failed to attend a Parent-Teacher conference at [M.W.K.'s] school regarding [M.W.K.'s] autism.

(i) [] Mother failed to attend a scheduled meeting at the Center for Community Resources in Butler regarding Pennsylvania insurance for autistic children. As a result of [] Mother's apparent disinterest, service providers have failed to agree to provide services.

(j) Due to Mother's lack of cooperation, [c]o-parenting counseling only just started on October 17, 2015 with Dr. Gregory Robb [sic], the counselor chosen by [] Mother.

(k) Dr. Robb [sic] recommended therapy for the [C]hildren but the same is not scheduled due to [] Mother's refusal.

(l) Mother has not consistently had the [C]hildren available for telephone conversations.

(m) On two (2) occasions Mother has failed to appear for exchange of the [C]hildren. On another occasion [] Mother failed to notify [M.W.K.'s] school that she was not picking him up. As a result [M.W.K.] was not placed on the bus and Father had to pick him up.

(n) Mother consistently fails to use the Family Wizard to reply to Father with information necessary to the [C]hildren's welfare.

WHEREFORE, in light[] of the foregoing, [Father] believes that the [C]hildren are in danger when in Mother's [c]ustody and are also placed in danger by the current [o]rder granting the parties joint legal custody. [Father] thereby requests the following special relief:

That the Petitioner-Father be granted sole legal and sole physical custody of the [C]hildren until further order of court.

Father's Petition for Contempt and Special Relief, at 1-3.

On March 23, 2016, the trial court held a hearing on the petition for contempt and special relief. At the commencement of the hearing, Father's trial counsel requested permission to present the testimony of Mark Snyder, a licensed psychologist, via telephone. N.T., 3/23/16, at 2. Mother's counsel objected to Mr. Snyder testifying, but not to the admission of his report. *Id.* at 2-3. The trial court sustained Mother's objection, on the basis that the proffered testimony of Mr. Snyder was more suitable to a custody modification hearing than to Father's petition for contempt and special relief. *Id.* at 3-8. The trial court stated that, to the extent that Father was seeking a change in custody because Mother's way of parenting the Children was harmful to them, he had failed to file a motion for modification of custody, and such a request was outside the scope of the petition presently before the court. *Id.* at 5. The trial court left open the possibility that Father could potentially present the testimony of Mr. Snyder later in the hearing, if the testimony was necessary and relevant. *Id.* at 6. Father then testified on his own behalf. Mother's trial counsel cross-examined Father. The trial court also questioned him.

At the close of the testimony, Father's trial counsel stated that, in the petition for contempt, Father was challenging Mother's failure to abide by the paragraphs in the June 30, 2015 custody order directing the parties to engage in co-parent counseling. N.T., 3/23/16, at 70-73. Father was also

challenging the provision regarding the time for the one telephone call a day being between 7:00 p.m. and 7:30 p.m. *Id.* Father stated that he had the phone records at home, and that he was not given a phone call from the Children mostly on Saturday nights, but he lacked specific dates. *Id.* at 71-72. With regard to the petition for special relief, Father's counsel stated that Father was requesting that there not be any rats in Mother's household. *Id.* at 73-74. Moreover, Father requested special relief with regard to M.W.K., seeking treatment of the autistic child in accordance with Mr. Snyder's recommendation, which requires cooperation by both parents to have those services provided and completed. *Id.* at 74.

On the record, the trial court stated that, in the light most favorable to Father, there was insufficient evidence as to contempt, so the court was denying the contempt portions of the petition. *Id.* at 75. With regard to special relief, Mother's counsel agreed that there were no rats in Mother's household at that time, so the trial court granted Father's request to the extent that there would be no rats as pets in Mother's household. *Id.* at 76. With regard to the cooperation of the parents on services for M.W.K., the trial court held the petition for special relief open, and directed Father to provide the court with Our Family Wizard documents between October 1, 2015 and March 30, 2016, over Father's objection that he lacked the funds to do so. *Id.* at 76-79.

The trial court specifically determined:

[E]ven taking your testimony in the light most favorable to you, it does not look good. My [o]rder was very specific about co-parenting. If I had wanted a specific type of co-parenting provider, it would have been in my [o]rder. It was not your place to put restrictions on [Mother] from my [o]rder. You don't have the authority to do that, at all. And quite frankly, that is a demonstration of how I believe that you are very controlling in this case and try to be domineering and controlling as it relates to [Mother]. And I believe that you use your child's autism – you misuse it as a hammer over her, to dominate and control.

Now, I also believe that you truly care about your son and you want him to have the best services. But you cannot continue to have poor communication skills, which you have and she has. You both do. But you cannot continue to wrap your poor communication skills in an excuse of your son's autism, and that is all I heard today. And if you are truly an advocate for your son, and this wasn't getting done, I wouldn't have gotten a petition in November or December, so that he was in services. I am extraordinarily disappointed that he is not in services and getting what he needs.

Now, for those services that are available, and what I understand from your own testimony is that some of his most basic needs are not being met because there are not openings. And, so, even if [Mother] were cooperative – and I'm not saying she wasn't. I don't know that that would be my finding of fact at all. But I am reserving that until I see the Our Family Wizard because Our Family Wizard is the best way for me to see how you two are communicating and whether or not there is a legitimate disagreement as to how to proceed or whether his is a failure of you to accept what she is saying. And when I see those, then I will have a very good – when I see the totality of them, not just a few pulled for your benefit – which, again, those weren't introduced anyway, but I am going to order that they be introduced.

* * *

But my job is to make sure that [E.M.K. and M.W.K.] – but I think things are going fine with [E.M.K.] – but that [M.W.K.] is getting what he needs to get. This co-parenting counseling – no excuse for you not being in it. None at all. No excuse for the delay. And to be honest with you, I have no idea why you are

not still in it. All I know is, you are supposed to be in it. So, as far as I am concerned, you are both in contempt. You should be in it. And you should have been bringing Mr. Lobb in here today if it was something that was [Mother's] fault, so to speak. You didn't do that.

N.T., 3/23/16, at 80-82.

Finally, the trial court stated that it would be appointing a GAL, which would cost the parents money every time there was a problem and the GAL has to become involved. *Id.* at 81-82.

On June 2, 2016, the trial court entered an order that provided that M.W.K. would be enrolled in the extended school year for the month of July 2016, and that the parties would cooperate to enroll the Children in counseling, preferably Summit Academy or alternatively at Kids Count/Family Psychological Associates in Butler, Pennsylvania.

On July 22, 2016, the trial court entered the following factual findings based on the evidence admitted at the evidentiary hearing:

> In November of 2015, Father noticed [E.M.K.] had a fever and an issue with one finger. Father later learned [E.M.K.] had been bitten by Mother's pet rat when [E.M.K.] stuck her finger through the bars of the cage. Mother cared for the wound, but failed to tell Father about the bite. [E.M.K.'s] bite became infected and required medicine and a hospital stay. [E.M.K.] has made a full recovery.
>
> [M.W.K.] is a special needs child diagnosed on the autism spectrum. On October 21, 2015, [M.W.K.] was re-evaluated by Mark Snyder, who provided detailed recommendations in a report. Father alleges that due to Mother not attending a funding meeting in early November, 2015, [M.W.K.] was denied certain services. However, Father placed no credible evidence on the record that Mother's action or inactions caused [M.W.K.] to be without necessary services. To the contrary, the evidence

demonstrated that[,] while Father has [M.W.K.'s] best interest at heart, he is not willing to compromise with Mother or with service providers resulting in stalled services for [M.W.K.]. Lack of openings for [M.W.K.] with service providers also created delay.

Likewise, Father's insistence that Mother unconditionally agree to Father's decisions caused the delay in co-parenting counseling. This [c]ourt reviewed the Our Family Wizard e-mails and found no evidence to support Father's claim that Mother "consistently fails to use Our Family Wizard." In fact, the [c]ourt reminds Father that the Our Family Wizard should not be used to harass Mother.

There is no credible evidence to support that Mother has placed either child in danger or risk of irreparable harm. There was no credible evidence placed on the record regarding Father's Petition paragraph 7(b), (k), or (m).

Trial Court Order, 7/22/16.

In accordance with its factual findings, the trial court entered the order

at issue that provided the following:

1. Father's request for sole legal and physical custody is denied;

2. Mother is not in contempt of [c]ourt regarding daily phone calls, however, Mother shall assure that the children have no other activity or distraction during the 7:00 to 7:30 p.m. time period pursuant to the current [c]ustody [o]rder;

3. Mother is not in contempt of [c]ourt regarding co-parenting counseling;

4. Mother is not in contempt of [c]ourt for failing to consistently use or respond to Father on Our Family Wizard;

5. Mother is not in contempt of [c]ourt regarding attending [M.W.K.'s] first grade orientation, an evaluation by Mark Snyder, the parent-teacher conference, or the meeting at the Center for Community Resources;

6. Mother and Father shall cooperate in ensuring that [M.W.K.] attends all scheduled medical and therapy appointments, including but not limited to evaluations so long as the appointments are timely and reasonably communicated on Our Family Wizard;

7. [M.W.K.] shall be re-evaluated pursuant to Mark Snyder's report following an evaluation on October 21, 2015;

8. Mother shall not keep pet rats in her home or any other place where the [C]hildren would have access to same.

Trial Court Order, 7/22/16, at 1-2. The order further appointed Attorney Dorothy Pentrancosta as GAL for the Children. *Id.* at 2.

On August 19, 2016, Father, acting *pro se*, filed a notice of appeal.[3] In an order entered on August 23, 2016, the trial court directed Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) within ten days or face waiver of all issues on appeal. Trial Court Order, 7/23/16. On August 29, 2016, Father filed his concise statement, setting forth eleven issues for review. As Mother does not assert prejudice from Father's late concise statement, and Father complied with the court's order to file a concise statement by a certain date, we do not find his issues waived. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that there is no *per se* rule mandating quashal or dismissal of a

_____

[3] Father did not file a corresponding concise statement of errors complained of on appeal with his notice of appeal as required by Pa.R.A.P. 905(a)(2). *See* Pa.R.A.P. 905(a)(2) ("If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal and served in accordance with Rule 1925(b)(1).").

defective notice of appeal in children's fast track cases); ***Mudge v. Mudge***, 6 A.3d 1031 (Pa. Super. 2011) (same). ***Cf. J.P. v. S.P.***, 991 A.2d 904 (Pa. Super. 2010) (holding that an appellant waives all issues by failing to timely comply with the trial court's direct order to file a concise statement); ***J.M.R. v. J.M.***, 1 A.3d 902 (Pa. Super. 2010) (holding that the appellant waived all issues for failing to file a concise statement in compliance with an order of this Court).[4]

In his concise statement and brief on appeal, Father raises eleven issues, which the trial court addressed as follows:

> Matter 1. **The court errored** [sic] **in its discretion to consider information of public record, Appendix T of Healthchoices Behavioral Health Services Guidelines for Behavioral Health Medical Necessity Criteria developed by Commonwealth of Pennsylvania Department of Public Welfare Office of Mental Health and Substance Abuse Services, Butler County Independent Prescriber Directory, Butler County Provider Directory, Value Behavior Health (Insurance Company) TSS Scheduling Process, Pennsylvania Autism Act (Act 62) and Individuals with Disabilities Education Act.**
>
> Father did not raise this objection at the hearing, nor did he present the [trial court] with any such information to consider.
>
> Matter 2. **The court errored** [sic] **in its discretion by not allowing into evidence of** [sic] **letter dated November 20, 2015 and attached BHRS Discharge Summary dated June 18th 2015, from Family Psychological Services a Provider listed in Butler County Provider Directory. This Provider**

_____

[4] Both parties are proceeding *pro se* in this appeal and appeared at oral argument. Mother did not file a *pro se* brief with this Court, precluding her from arguing, but the panel noted her appearance.

- 13 -

**had availability, verifiable as they did not report "full capacity" to the required agency.**

Father did not make a motion to admit these documents into evidence and never provided the [c]ourt with any such documents, nor did he make mention of them. The only exhibit admitted into evidence was Exhibit 1, which is an evaluation report issued by Mr. Snyder, which opposing counsel stipulated to its admission. (Record at 15-16).

Matter 3. **The court errored** [sic] **in its [discretion] by not allowing phone testimony of Mark Snyder, Licensed Phycologist and Independent Prescriber[,] author of prescription for services for minor autistic child [M.W.K.].**

Father attempted to call Mr. Mark Snyder as an expert to testify by telephone, however opposing counsel objected due to unfair surprise as he did not file a motion requesting that this witness be allowed to testify by phone before the hearing. (R. at 2-3). Opposing counsel also objected on the basis of relevancy as she believed the testimony would go beyond the scope of the petition and Mr. Snyder's report. (R. at 3). Furthermore, upon a proffer of testimony offered by Father, the [trial court] determined that the scope of testimony exceeded the Petition for Special Relief and Contempt before the [trial court]. (R. at 3-5). The testimony from Mr. Snyder would be relevant for a Modification of Custody as the evidence seeks to change the parties' 50-50 legal custody. (R. at 5). The [trial court] left the possibility open for Mr. Snyder to testify in person a later date if he is necessary and relevant to the Petition for Contempt and Special Relief, but Father did not request future testimony from the [trial court]. (R. at 6). Father also was required to provide an expert report for Mr. Snyder, if he was to testify in an expert capacity, which he failed to do. (R. at 7).

Matter 4. **The court errored** [sic] **in its discretion by limiting the scope of Our Family Wizard emails to October 2015 and not allowing emails to be enter** [sic] **into evidence collaborating [Father's] testimony during trial.**

The [trial court] did not limit the Our Family Wizard emails to October 2015, but rather ordered that they be produced from October 1, 2015 until March 15, 2016. (R. at 77). The only objection Father made was that he did not have the funds to

print all the emails. (R. at 77). Father was ordered to produce these emails because he brought the petition and alleged that there is no cooperation from Mother when he attempts to communicate with her. (R. at 78). Furthermore, Father never objected to the scope of the emails, so his objection was waived.

Matter 5. **The court errored** [sic] **in its discretion by not ordering phone records to be produced with ordered Our Family Wizard emails.**

Father indicated that there were specific dates that he was prohibited from having a phone call with the [C]hildren. However, Father could not recall the exact dates. The [trial court] provided Father with an opportunity to refresh his recollection with a document; however, Father left the phone records at home and did not present them to the [trial court]. (R. 71). Father also never requested that the [trial court] order the phone records to be produced.

Matter 6. **The court errored** [sic] **in its discretion by finding [Father] delayed Co-Parenting by exercising his right to a qualified co-parenting counselor (therapy) and ignored testimony and email evidence that [Mother] choose the counselor Greggory Lobb and after a few sessions refused to cooperate and continue sessions.**

The [trial court] relies on the record to support this finding of fact.

Matter 7. **The court errored** [sic] **in its findings of facts that BHRS providers and insurance carriers can and have denied prescribe** [sic] **services in prescription by Mark Synder, Licensed Phycologist** [sic] **and Independent Prescriber as outlined in Appendix T of Healthchoices Behavioral Health Services Guidelines for Behavioral Health Medical Necessity Criteria Developed by Commonwealth of Pennsylvania Department of Public Welfare Office of Mental Health and Substance Abuse Services, if both parents are not in agreement of service. By not attending evaluations for a prescription for autistic services and Inter-Agency Service Planning Meetings (ISPT) or "funding meeting", [Mother] has delayed critical care for autistic minor child [M.W.K].**

Father did not present any documents nor make mention of any of the above listed documents or forms of information.

Matter 8. **The court errored** [sic] **in its finding by not finding [Mother's] inability to communicate and respond in a timely matter has delayed critical care of minor children [M.W.K. and E.M.K.].**

The [trial court] relies on the record to support this finding of fact.

Matter 9. **The court errored** [sic] **in its findings of fact that irreparable harm to autistic minor child [M.W.K.] has not resulted from significant delays in his treatment, prescriptions and delay of services in school.**

The [trial court] relies on the record to support this finding of fact.

Matter 10. **The court errored** [sic] **in its discretion by order dated July 19th of 2016 by denying special relief for sole legal custody and physical custody of minor children [M.W.K.] and [E.M.K.] to [F]ather.**

The [trial court] relies on the record to support this finding of fact.

Matter 11. **The court errored** [sic] **in its discretion by order dated July 19th of 2016 appointing Guardian at** [sic] **Litem Dorothy Pentrancosta, Esq..**

The [trial court] relies on the record to support this finding of fact. The [trial court] ordered this appointment due to the contentious nature between Father and Mother and their inability to communicate on issues regarding the children, especially their autistic son, M.W.K.

Trial Court Opinion, 9/22/16, at 1-5 (emphasis in original); *see also*

Father's Brief, at 4-6.

In his brief, Father argues as follows.

- 16 -

In this case two children and their best interests and welfare was and remains at issue. Specifically in the case of autistic child M.W.K.[,] neither the [trial c]ourt nor [Mother] understand the complicated process in obtaining services which are strictly voluntary or the importance of these services at specific stages of development. Furthermore, these services are consistently changing and adapting to the meet the needs of the autistic child on a monthly basis. Having the capacity to quickly change and adapt to the needs of an autistic child is critical to his success and to maximize his potential ultimately leading to a productive member of society in adulthood. Since the nature of autism reflects the individual uniqueness not one person can provide expert testimony to the exact needs of any particular autistic child therefore all therapies and treatment are developed strictly from the input of the parents, who are the accepted expert of an autistic child. Nevertheless we must rely on the fact finding and broad discretion of the courts to remedy a solution especially in high conflict cases such as this.

Very early in these proceedings it became obvious a favorable bias began to form towards [Mother] and her defense council [sic] being a *Guardian at Litem* for the Courts in Butler County. This status elevated credibility towards [Mother's] council [sic] and clearly impeded [Father's] council [sic] attempts to provide [the trial] court with relevant facts, evidence and testimony.

\* \* \*

[Father] attempted at numerous times to admit testimony and documents to the attention of the [trial] court but was denied on all occasions. (See Record p17-22, p 50, p 59) [Father's] testimony identified that by not attending an evaluation and/or an ISPT meeting any and all service can be denied, changed and result in service providers not accepting the case. These documents have been provided to [Mother] on numerous occasions including her council [sic]. Any documents stating Law, State approved procedures, and State Approved Insurance Providers Procedure in accordance to existing laws should be considered and testimony not need to be from an expert as well considered hearsay in regards to testimony of these documents especially when the State itself expects parents to be experts on these matters. By impeding further testimony and acceptance of these documents a foundation could not be established for the introduction of other evidence including supporting

documentation providing this court and example if procedures are not properly followed. Important testimony from Mark Snyder would have indicated [Mother's] role in termination of services that already had been started.

Once the obvious bias formed it was clearly impossible for [Father] to continue his case including testimony, additional evidence, cross of [Mother] and mount any further objections became impossible. (See Record p55, p62, p77) This bias was evident by the [trial] court not ordering phone records to be produced in support [Father's] testimony with ordered Our Family Wizards emails. Our Family Wizard Emails [sic] themselves should have been ordered from the date of the custody order to establish and ensure a complete history of communications including attempts by [Father] to implement the order. It is within the courts ability with its broad discretion powers to accept evidence when it is in the best interest of a child. It is the role of the [c]ourt to ensure a fair and unbiased trial is held regardless of council [sic] standings and competencies.

VII. CONCLUSION

In conclusion [Father] request[s] this case and record to be reopened for additional evidence, testimony and objection to be considered.

Father's Brief, at 10-15.

Father asserts that the trial court erred in not holding Mother in contempt and not awarding him sole and physical custody of the Children. In **P.H.D. v. R.R.D.**, 56 A.3d 702, 708 (Super. 2012), we stated that a motion for modification must be filed before a trial court may alter the terms of a custody order. With regard to civil contempt, this Court has set forth our scope and standard of review as follows:

In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the

sound discretion of the trial judge when reviewing an order of contempt.[fn]

_____

[fn] To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* at 706 (Super. 2012) (quotation and citation omitted) (footnote in original).

Additionally, we have stated:

When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence.

* * *

In ***Langendorfer [v. Spearman]***, 797 A.2d 303 (Pa. Super. 2002), this Court stated that a party may be held in contempt for willfully failing to comply with a visitation or partial custody order, as long as the procedures outlined in ***Crislip v. Harshman***, 365 A.2d 1260 (Pa. Super. 1976), are followed. . . .

Further, with regard to contempt orders, this Court has stated:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute. When reviewing an appeal from a contempt order, the appellant [sic] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of

- 19 -

review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Harcar v. Harcar*, 982 A.2d 1230, 1234-1235 (Pa. Super. 2009) (some quotations and some citations omitted). We reiterate, "[e]ach court is the exclusive judge of contempts against its process." *Harcar*, 982 A.2d at 1235. Moreover, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Id.* at 1236 (quotation omitted).

We also review a trial court's ruling on a petition for special relief for an abuse of discretion. *Johnson v. Johnson*, 864 A.2d 1224, 1229 (Pa. Super. 2004). We have explained:

An abuse of discretion has been explained by the appellate courts of this Commonwealth as more than an error in judgment; we may find an abuse of discretion only on clear and convincing evidence that the trial court misapplied the law or overrode it or that the judgment reached was manifestly unreasonable, or based on bias, ill-will, or partiality. *See Bowser v. Blom*, 766 A.2d 1259, 1260-61 (Pa. Super. 2001).

*Id.* "[A] petition for special relief is an appeal to the equitable powers of the trial court." *Id.* at 1230.

After reviewing the record, we conclude that the trial court did not abuse its discretion in denying Father's motion to hold Mother in contempt. Moreover, the trial court did not err in not modifying custody as no custody modification petition was before it.

- 20 -

Regarding Father's arguments concerning the trial court's decisions to admit or exclude certain items and/or testimony from evidence, we note the following standard of review:

Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Schuenemann v. Dreemz*, *LLC*, 34 A.3d 94, 100-101 (Pa. Super. 2011) (quotations and citations omitted). Thus, the question of whether to admit *or exclude* evidence is within the sound discretion of the trial court. ***See***

***A.J.B. v. M.P.B.***, 945 A.2d 744, 749 (Pa. Super. 2008). We have explained:

The basic requisite for the admission of any evidence is that it be both competent and relevant. Evidence is "competent" if it is material to the issues to be determined at trial, and "relevant" if it tends to prove or disprove a material fact in issue.

***Turney Media Fuel, Inc. v. Toll Bros.,*** 725 A.2d 836, 839 (Pa. Super. 1999).

Further, although we recognize that Father is proceeding *pro se*, this does not protect him from a finding of waiver. It is well established that

[w]hile this [C]ourt is willing to liberally construe materials filed by a *pro se* litigant, . . . [such litigant] is not entitled to any particular advantage because he lacks legal training. Further, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

*Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa. Super. 2003) (citations, quotation marks, and brackets omitted). We find no abuse of the trial court's discretion in finding that Father had waived some of his issues regarding the admission and/or exclusion of evidence, and that his remaining challenges to the trial court's evidentiary rulings lack merit.

Moreover, issues that were not raised by motion or complaint before the trial court in the first instance may not be raised on appeal. Pa.R.A.P. 302(a); *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116-117 (Pa. 1974). Thus, Father has waived the issue of trial court bias by his failure to preserve it at the earliest opportunity, and he cannot raise it now on appeal. *See Schwarcz v. Schwarcz*, 548 A.2d 556, 572 (Pa. Super. 1988) ("[O]nce a custody order has been issued and a party has waived his right to disqualify the trial judge, he cannot complain after the issuance of the order."). Even if Father had not waived the bias issue, "[a] jurist's former affiliation, alone, is not grounds for disqualification." *Commonwealth v. Abu-Jamal,* 720 A.2d 79, 90 (Pa. 1998). As nothing in the record evidences any bias against Father, the fact that the trial court judge might know Mother's trial counsel professionally did not warrant recusal. *See id.* (holding that a judge's affiliation with the Fraternal Order of Police was not grounds for disqualification); *City of Pittsburgh v. DeWald*, 362 A.2d 1141, 1143-1144 (Pa. Cmwlth. 1976) (holding that the trial judge was not required to recuse herself based on her having practiced

law with the attorney for one of the parties). Father's claim of trial court bias does not warrant reversal in this instance. "It has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict." *Commonwealth v. Irwin*, 579 A.2d 955, 957 (Pa. Super. 1990).

In sum, our review of the record in this matter supports the trial court's factual findings and conclusions. As we find that the record supports the trial court's credibility assessment, we will not disturb the trial court's decision that Mother has not acted in contempt of the trial court's June 30, 2015 custody order. Further, our review supports the trial court's determination that the special relief Father requested in his petition, *i.e.*, an award of sole legal and physical custody to him, was not warranted, especially in light of Father's failure to file a petition for modification of custody. We, therefore, affirm the trial court's July 22, 2016 order denying Father's petition to find Mother in contempt of the June 20, 2015 custody order and to grant special relief to him in the form of sole legal and physical custody, on the basis of the discussion in the trial court's opinion entered on September 22, 2016.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/9/2017</u>