ISN BANK f/k/a Interstate Net Bank,
n/k/a Customers Bank, Appellant

v.

Arasu RAJARATNAM, Appellee.

ISN BANK f/k/a Interstate Net Bank,
n/k/a Customers Bank, Appellant

v.

Emma RAJARATNAM, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 8, 2013.
Filed Nov. 25, 2013.
Reargument Denied Feb. 4, 2014.

Leona Mogavero, Philadelphia, for appellant.

Jared N. Klein, Philadelphia, for appellee.

BEFORE: BOWES, DONOHUE and OTT, JJ.

**OPINION BY DONOHUE, J.:**

Appellant, ISN Bank f/k/a Interstate Net Bank, n/k/a Customers Bank ("Customers Bank"), appeals from the order of the trial court dated January 24, 2013 denying a motion to consolidate two judgments, one each against Appellees, Arasu and Emma Rajaratnam (together, the "Rajaratnams"). This case presents an issue of first impression for Pennsylvania appellate courts, namely whether separate judgments entered against a husband and wife may be consolidated so that assets held as tenants by the entireties may be executed upon to satisfy a joint indebtedness. For the reasons that follow, we conclude that they may not be consolidated and affirm the trial court's order.

■ On or about December 21, 2005, ISN Bank, f/k/a Interstate Net Bank ("ISN Bank") made a construction loan to Tower Apartment Partnership, LLP ("Tower") in the maximum amount of $6,980,395 to finance the renovation of a property on Morris Street in Philadelphia into a 36 unit condominium development. At that time, Arasu Rajaratnam, the principal of Tower, also executed and delivered a guaranty agreement to ISN Bank (the "2005 Guaranty Agreement"). The Tower loan was originally due and payable in full on December 21, 2007, but on or about October 26, 2007, ISN Bank agreed to extend the maturity of the loan to June 21, 2008. At that time, Arasu Rajaratnam and his wife Emma Rajaratnam both executed a guaranty agreement to ISN Bank (the "2007 Guaranty Agreement").

The loan to Tower eventually went into default, and on August 5, 2009 a judgment by confession was entered in favor of ISN Bank and against Arasu Rajaratnam pursuant to the 2005 Guaranty Agreement, in the amount of $4,988,321.05 plus accruing interest and attorneys' fees.

On May 24, 2010, ISN Bank filed a complaint against Emma Rajaratnam based upon her obligations under the 2007

Guaranty Agreement.[1] On July 11, 2011, the Morris Street property was sold at a sheriff's sale and purchased by Customers Bank. Customers Bank filed a Petition to Fix Fair Market Value and Establish Deficiency Judgment, naming, *inter alia*, the Rajaratnams, as respondents.

On February 29, 2012, the trial court conducted a bench trial in the action against Emma Rajaratnam, after which it found Emma Rajaratnam was bound by the terms of the 2007 Guaranty Agreement and that she was liable in an amount to be determined by resolution of the deficiency judgment petition. On June 19, 2012, the parties disposed of the deficiency judgment petition through a court-approved stipulation of the parties, pursuant to which a deficiency judgment was established in favor of Customers Bank in the amount of $3,300,764.53, plus additional interest accruing from and after May 23, 2012 at the legal rate of $515.798 per day.

On December 3, 2012, Customers Bank moved to consolidate the judgments entered against Arasu Rajaratnam individually on the 2005 Guaranty Agreement and against Emma Rajaratnam individually on the 2007 Guaranty Agreement. By order dated January 24, 2013, the trial court denied the motion to consolidate the two judgments.

This appeal followed, in which Customers Bank raises the following issue for our consideration and determination:

Did the trial court err in denying [Customers Bank's] Motion for Consolidation of Judgments where judgments were entered against husband and wife for the same indebtedness and for which husband and wife had agreed in a single document to be jointly obligated?

Brief of Customers Bank at 1.

■ No procedural mechanism exists in Pennsylvania to consolidate judgments against different people. Rule 3025.1 of the Pennsylvania Rules of Civil Procedure authorizes the consolidation of "two or more judgments entered against the same person in the same county," Pa.R.C.P. 3025.1, but no similar rule sanctions the consolidation of two or more judgments entered against different people (whether husband and wife, or otherwise). On appeal, Customers Bank cites to two older cases, *Appeal of Reed*, 7 Pa. 65 (1847), and *Appeal of Yeager*, 129 Pa. 268, 18 A. 137 (1889), but these cases both involved the consolidation of multiple judgments against the same person, and thus are mere precursors of the current Rule 3025.1.

■ Customers Bank also contends that the trial court here had the ability to consolidate the two judgments at issue in this case based upon the "inherent power" of trial courts to modify their own judgments. Customers Bank Brief at 5. Pursuant to 42 Pa.C.S.A. § 5505, however, the trial court's broad discretion to modify its orders ceases thirty days after the entry of an order, and thereafter the trial court may exercise discretion to modify an order only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of "extraordinary cause justifying intervention by the court." *See, e.g., Verholek v. Verholek*, 741 A.2d 792, 798 (Pa.Super.1999), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000). After the initial thirty-day period, a trial court may

---

1. On or about September 17, 2010, the New Jersey Department of Banking and Insurance closed ISN Bank, and the Federal Deposit Insurance Corporation ("FDIC") was named as receiver. Customers Bank purchased certain ISN Bank's assets, including the Tower loan, from the FDIC.

modify an order only to correct a clerical error or other formal error which is clear on the face of the record and which does not require an exercise of discretion. *See, e.g., Stockton v. Stockton,* 698 A.2d 1334, 1337 n. 3 (Pa.Super.1997). The motion to consolidate judgments filed by Customers Bank in this case did not qualify under any of these categories for either discretionary or non-discretionary modifications, and thus we agree with the trial court's contention that it had no procedural authority to consolidate judgments against different people. Trial Court Opinion, 5/22/2013, at 10.

■ Even if a procedural mechanism did exist for consolidating judgments against different people, Pennsylvania substantive law would not permit consolidation in this case. In this regard, we begin with the 1912 decision in *Beihl v. Martin,* 236 Pa. 519, 84 A. 953 (1912), in which our Supreme Court discussed "the modern innovations on the common law respecting the property rights of married women." *Id.* at 522, 84 A. at 954. The case involved an attempt by Beihl and his wife to sell a property they owned as tenants by the entireties to a third party (Martin) even though Beihl (but not his wife) had been declared bankrupt and had unpaid judgments outstanding against him. The Court began with a description of basic attributes of property held in a tenancy by the entireties:

> Fundamentally the estate rests on the legal unity of husband and wife. It is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seized of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate.

> It is this striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately. The enforcement of such process would be the taking of the property of one to pay the debt of another.

*Id.* at 522–23, 84 A. at 954. Because of this "striking peculiarity," the Supreme Court observed that any disposition of property held as tenants by the entireties must be based upon a "joint act" of husband and wife together:

> Any alienation by one, the other not consenting, of any interest whatever in the estate, if allowed, would be an abridgment *pro tanto* of the rights of the other. By their joint act they admittedly have the right to sell and dispose of the whole estate; by their *joint act* they may strip the estate of its attributes and create a wholly different estate in themselves; but neither can divest himself or herself of any part without in some way infringing upon the rights of the other.

*Id.* at 527–28, 84 A. at 956 (emphasis added). Because the judgments against Beihl were not the products of "joint acts" by Beihl and his wife, the Supreme Court ruled that the liens against Beihl individually had no effect on the ability of Beihl and his wife to sell their entireties property to Martin. *Id.*

■ Based upon the basic principles established in *Beihl,* the law of Pennsylvania has developed to provide that in order to execute upon property held as a tenancy by the entireties, a creditor must obtain a

judgment against both the husband and the wife as joint debtors:

> The law of Pennsylvania is quite clear that a judgment creditor may execute on entireties property to enforce his judgment if both spouses are joint debtors. However, if only one spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale. In the latter situation, the judgment creditor has only a potential lien against property held by the entireties based on the debtor spouse's expectancy to become sole owner. Further, where a husband and wife own property as tenants by the entireties, they may alien it without infringing upon the rights of one spouse's creditors.

*Klebach v. Mellon Bank, N.A.*, 388 Pa.Super. 203, 565 A.2d 448, 450 (1989) (citations omitted); *see also Arch Street Bldg. & Loan Assn. v. Sook*, 104 Pa.Super. 269, 158 A. 595, 596 (1932) ("In order to bind the land held by entireties, judgment must include both of the parties."); *Napotnik v. Equibank and Parkvale Sav. Ass'n*, 679 F.2d 316, 321 (3d Cir.1982) ("[A] creditor with a joint judgment on a joint debt may levy upon the property itself and thus upon the interests of both spouses.").

*Beihl* establishes the requirement of "joint action" by spouses to permit execution on property held as a tenancy by the entireties, but did not address what type of "joint action" is required of spouses to create a joint debt to permit an encumbrance. *Beihl* does not resolve the question of whether the "joint action" requirement must be satisfied by the performance of a single act performed by husband and wife together, or if instead separate acts resulting in the same indebtedness will suffice. In this case, Customers Bank contends that although the two judgments at issue here resulted from separate acts (*i.e.,*

signing two different guarantee agreements), the end result of these separate acts was a joint indebtedness of the Rajaratnams, thus permitting consolidation of the judgments to reach their entireties property to satisfy said joint indebtedness. Customers Bank's Brief at 4.

As noted, no Pennsylvania appellate court has addressed this issue. In *A. Hupfel's Sons v. Getty*, 299 F. 939 (3d Cir.1924), however, the Third Circuit Court of Appeals, applying Pennsylvania law, considered whether separate acts by spouses resulting in a joint indebtedness may result in the encumbrance of entireties property under the principles set forth in *Beihl*. While the decision in *A. Hupfel's Sons* is not binding upon this Court, we may consider it as persuasive authority on the issue now before this Court. *See, e.g., Commonwealth v. Dunnavant*, 63 A.3d 1252, 1255 n. 2 (Pa.Super.2013), *appeal granted on other grounds*, —— Pa. ——, 73 A.3d 524 (2013).

In *A. Hupfel's Sons*, Bernard Lucke, a saloon keeper, borrowed money from A. Hupfel's Sons, a corporation, to, *inter alia*, purchase beer, and provided a bond and a chattel mortgage to secure his debt. *A. Hupfel's Sons*, 299 F. at 940–41. After he defaulted, A. Hupfel's Sons obtained a judgment against him. *Id.* at 941. Marie Lucke, Bernard's wife, then entered into an agreement with A. Hupfel's Sons whereby she agreed to take over her husband's indebtedness if money was advanced to permit her to purchase a liquor license. *Id.* Marie Lucke also defaulted and A. Hupfel's Sons obtained a judgment against her. *Id.* With these two judgments unsatisfied, Bernard and Marie Luck sold their entireties property to a third party, Marget Getty. *Id.* at 939. When A. Hupfel's Sons issued writs of

execution against the entireties property to satisfy its judgments, Marget Getty filed an action to quiet her title. *Id.*

Based upon these facts, the Third Circuit "fail[ed] to find joint action in any sense":

> Bernard Lucke, acting alone, gave a bond and chattel mortgage based upon a consideration of existing indebtedness. That was one transaction. Marie Lucke, desiring money with which to obtain a liquor tax certificate and embark in business for herself, assumed her husband's indebtedness. This obligation was based upon a consideration entirely unrelated to the consideration of her husband's obligation. That was another transaction. The obligations arising from these separate transactions were therefore not joint. They were separate, both in point of time and purpose.

*Id.* at 941. Accordingly, the Third Circuit concluded as follows:

> "The tenants [Bernard and Marie Lucke] were without doubt mutually interested in the transactions which resulted in the two judgments. But mutuality of interest in separate transactions out of which have grown separate obligations based upon different considerations does not amount to joint action within our understanding of the law of *Beihl v. Martin.*"

*Id.*

We agree with the Third Circuit that separate actions by spouses resulting in separate judgments are not sufficient to encumber entireties property.[2] To establish a joint debt that may serve as the basis for a lien on entireties property, the two spouses must act together in the same transaction and in so doing incur a joint liability.[3] Only by acting together will the spouses satisfy *Beihl's* "joint action" requirement, as their mutual decision to incur a joint debt demonstrates a willingness to "strip the estate of its attributes and create a wholly different estate in them-

---

**2.** We do not find two federal court decisions cited by Customers Bank to be persuasive authority in this case. In *U.S. v. James Eglinton, Jr.*, 1990 WL 69027, 1990 U.S. Dist. LEXIS 6266 (E.D.Pa.1990), the federal government was permitted to execute upon entireties property based upon separate judgments against spouses for the failure to pay employment taxes. The federal district court so ruled, however, based upon application of a federal tax statute (26 U.S.C. § 6672), rather than upon Pennsylvania law. *Id.* at *2–*3, 1990 U.S. Dist. LEXIS 6266 at *7–*8.

In *Westmoreland Mall, Inc. v. Bialon*, 67 B.R. 451 (Bankr.W.D.Pa.1986), a federal bankruptcy court refused to exempt entireties property from the reach of creditors after a husband guaranteed the obligations of his wife under a retail lease agreement. The federal court ruled that "[t]he instruments here, although physically separate, created a joint obligation and made [wife] and her husband, as surety, jointly and severally liable to the Movants." *Id.* at 453. We place no reliance upon the *Bialon* decision because its focus was solely upon the joint indebtedness of the spouses to the creditor, and made no attempt to identify any "joint action" by husband and wife, as required by *Beihl.*

**3.** Courts in other states have reached similar conclusions. *See, e.g., In re Davis*, 403 B.R. 914, 922 (Bankr.M.D.Fla.2009) ("Two separate judgments do not create a joint debt."); *Rogers v. Rogers*, 257 Va. 323, 327, 512 S.E.2d 821, 823 (1999) ("[T]the complainants have neither a statutory nor a common law right to satisfy their separate judgments by compelling a sale of real property held by the husband and wife as tenants by the entireties with the right of survivorship."); *State v. Friedman*, 283 Md. 701, 393 A.2d 1356 (1978) ("[S]eparate judgments obtained by a single creditor against a husband and wife that are based on separate transactions will not suffice to create a lien on entireties property; only a judgment obtained against both husband and wife arising out of a joint obligation may be satisfied by execution upon property held by the entireties.").

selves." *Beihl,* 236 Pa. at 527–28, 84 A. at 956.

In the present case, the separate judgments against the Rajaratnams were entered pursuant to separate documents, in separate transactions, and for separate considerations. The judgment against Arasu Rajaratnam resulted from his execution of the 2005 Guaranty Agreement, which he signed to secure the initial loan for his business. The judgment against Emma Rajaratnam, in contrast, resulted from her execution of the 2007 Guaranty Agreement, signed in part to obtain a change in terms of the loan, including an extension of the maturity date. The two judgments against the Rajaratnams are not even in the same amounts, as the judgment against Arasu Rajaratnam is for $4,988,321.05 while the judgment against Emma Rajaratnam is for $3,300,764.53.

█ Customers Bank argues that although it has two separate judgments based upon liability under two different agreements, the facts here nevertheless satisfy the "joint action" requirement because the Rajaratnams both signed the 2007 Guaranty Agreement and thus jointly agreed to be liable for the Tower loan. Customers Bank Brief at 6. We disagree. The judgment against Arasu Rajaratnam is not based upon any obligations under the 2007 Guaranty Agreement, and there has never been any judicial determination that he has any liability arising from that document. A judgment is the "final determination of the rights and obligations of the parties in a case," *Zaleppa v. Seiwell,* 9 A.3d 632, 640 (Pa.Super.2010), and may never be entered until after said parties have had an opportunity to appear and present their rights and defenses. *Crandell v. Pennsbury Twp. Bd. Of Supervisors,* 985 A.2d 288, 293 (Pa.Cmwlth.2009)

(citing *Callery v. Blythe Twp. Mun. Auth.,* 432 Pa. 307, 243 A.2d 385 (1968)). Suit was never filed against Arasu Rajaratnam on the 2007 Guaranty Agreement, and he has never had an opportunity to contest his liability in connection therewith. His liability to Customers Bank under the 2007 Guaranty Agreement may not be assumed, and entireties property owned by the Rajaratnams may not be encumbered based upon such an assumption.

At the time judgment was confessed against Arasu Rajaratnam in August 2009, the predecessors of Customers Bank could have filed suit against both Arasu and Emma Rajaratnam in an effort to obtain a joint judgment for liability under the 2007 Guaranty Agreement. Likewise, when suit was filed against Emma Rajaratnam in May 2010, Arasu Rajaratnam was not named as a party and thus no attempt was made to establish his potential liability under the 2007 Guaranty Agreement. These failures doomed any future attempt to execute against property held by the Rajaratnams as tenants by the entireties. With its motion to consolidate the two judgments against the Rajaratnams, Customers Bank essentially requests that this Court create a procedural mechanism to correct these failures. Finding no basis in Pennsylvania law, we decline to do so.

Order affirmed.