**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MCKENZIE M. GOFORTH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JASON E. GOFORTH | : | |
| | : | |
| Appellant | : | No. 700 WDA 2024 |

Appeal from the Order Entered May 20, 2024
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1402 of 2018 GD

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: April 21, 2025**

Jason E. Goforth ("Goforth") appeals from the order entered by the Fayette County Court of Common Pleas ("trial court"), directing the release of proceeds from the sale of his former marital home to Paul Mongell ("Mongell") and Huntington National Bank ("Huntington"), and denying a petition for special relief for attorney's fees filed by Goforth's attorney, Kevin Henderson ("Henderson").  Upon review, we affirm.

Goforth was married to McKenzie M. Goforth ("McKenzie") and together they owned a residence in Connellsville, Pennsylvania.  They held the property as tenants by the entireties during the marriage.  On July 5, 2018, McKenzie filed a complaint in divorce.  On July 2, 2020, Goforth and McKenzie entered into a marital settlement agreement, which, in part, directed the parties to list the marital residence for sale and stated that McKenzie would receive sixty

percent of the net proceeds and Goforth would receive forty percent of the net proceeds. Relevantly, the settlement agreement specified that each party would pay their own respective attorneys' fees. On August 19, 2020, the trial court entered a divorce decree and incorporated the marital settlement agreement. That same day, Goforth and McKenzie entered a sale of real estate to sell the marital property for $165,000.

On November 24, 2020, McKenzie filed a petition for special relief after a title company discovered liens filed by Huntington and Mongell against Goforth, which had not been previously disclosed during the divorce proceedings.[1] McKenzie requested the trial court permit the sale of the marital residence and hold Goforth's portion of the proceeds in escrow. On December 7, 2020, the trial court entered an order permitting the sale of the property and directed the forty percent of net proceeds distributable to Goforth be held in the escrow account by his attorney, Henderson, until further order of court to determine the priority of liens. Separately, Huntington and Mongell consented to the sale of the marital property, free and clear of the liens. As a result, the property was sold on December 17, 2020. Huntington and Mongell settled the priority of their liens agreeing that Huntington would

---

[1] In April 2019, Mongell obtained judgment against Goforth for approximately $525,000, and in September 2019, Huntington recorded judgment against Goforth for approximately $150,000 on a commercial loan.

receive twenty-five percent and Mongell would receive seventy-five percent of Goforth's net proceeds.

On December 30, 2020, Huntington and Mongell jointly filed a petition for rule to show cause why the proceeds should not be distributed to them as partial payments for their respective liens. Goforth filed a response. Separately, on January 29, 2021, Henderson filed a petition for special relief for attorney's fees, alleging that he and Goforth had entered into a written retainer agreement for his representation. Henderson argued his attorney fees should have priority for the proceeds from the sale of the property over the third-party lienholders. On July 19, 2022, the trial court denied Henderson's petition for special relief for attorney's fees, finding the contractual obligation to pay fees did not subvert the recorded liens. The trial court further directed that the net proceeds from the sale of the property be distributed to Huntington and Mongell in accordance with their agreement.

Following Goforth's appeal, this Court vacated the trial court's order and remanded for further proceedings. *See Goforth v. Goforth*, 299 A.3d 926 (Pa. Super. May 24, 2023) (non-precedential decision). Specifically, this Court concluded that the trial court did not adequately explain its decision, noting no findings of fact or conclusions of law were included in the decision, nor did the court address Goforth's issues. *Id.* at *3. This Court remanded for the trial court to detail its rationale for its decision. *Id.* Further, we noted there was a potential attorney-client conflict of interest, as Goforth's fee agreement

with Henderson, included in the marital settlement agreement, appeared to be adverse to Henderson's petition for special relief for attorney's fees. *Id.* at *4. This Court stated that when Henderson became aware that Goforth did not have funds to make any payments, his interest in securing payment for his representation may have eclipsed his loyalty to Goforth. *Id.* Thus, we remanded to determine the question of the potential conflict of interest; if there was no conflict, the trial court could re-enter the order and provide a detailed opinion that included its reasoning. *Id.*

On October 24, 2023, Goforth filed a petition for special relief, arguing that pursuant to 41 P.S. § 407, if he is the prevailing party, he would be entitled to recover attorney's fees and costs. The trial court held a hearing on October 31, 2023, at which Goforth testified. Ultimately, on May 20, 2024, the trial court denied the petition for special relief and directed the release of proceeds from his share of the sale of the marital residence to be paid to Mongell and Huntington in accordance with their previous agreement. Further, the trial court found that Goforth waived any conflict of interest with Henderson. Goforth timely appealed.

On appeal, Goforth raises the following questions for our review:

I.  Whether the [trial] court committed an error of law and or an abuse of discretion by ordering the proceeds of the sale of the marital residence to be remitted to the creditors instead of [Goforth] because the [trial] court failed to take into account that it held the property of the parties in custodia legis over the proceeds of the sale of the marital home held as tenants by the entireties where the divorce proceedings began before the third-party creditor liens

- 4 -

against only one spouse were filed, the divorce proceedings were pending and distribution of the proceeds of the sale of the marital home were in furtherance of the parties' equitable distribution of the marital property pursuant to the parties' marital settlement agreement?

II. Whether the [trial] court committed an error of law and or an abuse of discretion by failing to take into account that parties which were married at the time they entered into a marital settlement agreement were free to dispose of entireties properties pursuant to a marital settlement agreement without implicating the rights of third-party creditors of only one spouse?

III. Whether the [trial] court committed an error of law and or an abuse of discretion by failing to take into account the lower court rendered its order in a divorce case and failed to take into account the economic injustice that would result by awarding the proceeds of the sale of the marital home to third party creditors?

IV. Whether the [trial] court committed an error of law and or an abuse of discretion by failing to take into account that that the third-party creditors only have confessions of judgments against the appellant, that the third-party creditors did not comply with 41 P.S. § 407 and that [] Mongell's Confession of Judgment was not revived?

V. Whether the [trial] court committed an error of law and or an abuse of discretion by erroneously concluding that the parties to the divorce action and the third-party creditors agreed to the language in the Petition for Special Relief filed by McKenzie [] as it is clear from the record that the parties "through extensive negotiation" agreed to "the new form of the Order," not the Motion?

VI. Whether the [trial] court committed an error of law and or an abuse of discretion by denying [Goforth's] Attorney's Petition for Special Relief: Counsel Fees where [Goforth] had a contractual obligation to pay his attorney fees, [Goforth] granted his attorney an equitable lien against the gross proceeds of the sale of his marital residence long before the third-party creditor judgments ever existed, [Goforth] agreed to pay attorney fees as a gross cost of the sale of his

property before receiving the net proceeds from the sale of his property, the contractual obligation was entered into before the lienholder's judgments existed, the lienholders agreed in a subsequent order to take only the net proceeds of the sale and the lienholders benefited from [Goforth's] Attorney's work?

Goforth's Brief at 3-5.

This Court reviews an order denying a petition for special relief for an abuse of discretion. **Johnson v. Johnson**, 864 A.2d 1224, 1229 (Pa. Super. 2004). "[W]e may find an abuse of discretion only on clear and convincing evidence that the trial court misapplied the law or overrode it or that the judgment reached was manifestly unreasonable, or based on bias, ill-will, or partiality." **Id.**

### In Custodia Legis

In his first claim, Goforth contends that the trial court held the marital property in custodia legis,[2] and abused its discretion by remitting the proceeds of the sale of the property to his creditors. Goforth's Brief at 18-30. Goforth highlights that the marital settlement agreement, which made him contractually bound to list the property for sale, was incorporated into the divorce decree, and thus a part of the divorce proceeding. **Id.** at 18-19, 22-23. He notes that a property subject to a divorce proceeding is in custodia

_____

[2] In custodia legis means "[i]n the custody of the law … . The phrase is traditionally used in reference to property taken into the court's charge during pending litigation over it. — Also termed in legal custody." BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis omitted).

legis, under the control of the trial court, and cannot be subject to attachment. *Id.* at 22, 24, 25, 27, 33. According to Goforth, the entry of the divorce decree did not terminate the divorce proceedings, noting that the trial court maintains jurisdiction of the matter to enforce the terms of the marital settlement agreement and decide any petitions for special relief. *Id.* at 25-28, 29-30, 33. He maintains the trial court held the property in custodia legis until the agreed-upon distribution of proceeds were given to the parties. *Id.* at 28. Because the divorce proceedings were ongoing at the time the creditors filed liens against him, and Goforth and McKenzie owned the property as tenants by the entireties, he asserts that the proceeds of the sale of the property after the divorce should have been provided directly to him. *Id.* at 18-19, 23, 24; *see also id.* at 36-38 (noting that the trial court's finding that the marital property was held by the parties as tenants in common was an error of law). Goforth further argues that the trial court's emphasis on McKenzie's lack of knowledge of the liens was an abuse of discretion, as the parties were not required to disclose any debts under the settlement agreement and it is irrelevant to the determination of whether custodia legis applies. *Id.* at 33-36. In support of his argument, he contends the instant case is analogous to *Klebach v. Mellon Bank, N.A.*, 565 A.2d 448 (Pa. Super. 1989). Goforth's Brief at 22, 23-25.

In custodia legis is a common law doctrine that exempts from execution, garnishment, or attachment funds or property in the hands of an officer of the

court.  **Fid. Bank v. Carroll**, 610 A.2d 481, 483 (Pa. Super. 1992); **see also ISN Bank v. Rajaratnam**, 83 A.3d 170, 174 (Pa. Super. 2013) (noting that "if only one spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale").[3]  When a party initiates a divorce action, all marital property is placed under the jurisdiction of the trial court.  **Carroll**, 610 A.2d at 483.  "As such, the property [is] in custodia legis, or under wardship of the court, pending the outcome of the divorce proceeding."  **Id.**

Property in custodia legis is not subject to attachment until "parties to the action complied with the order of the lower court."  **Klebach**, 565 A.2d at 452.  However, the doctrine is limited to those circumstances which would allow trial courts to address the parties' marital interests; public policy encourages free alienation of property.  **See Mid–State Bank & Trust Co. v. Globalnet International, Inc.**, 735 A.2d 79, 84 (Pa. 1999).

Here, pursuant to the marital settlement agreement, Goforth and McKenzie agreed to sell the marital home, which was held as tenants by entireties during the marriage.  Marital Settlement Agreement, 7/2/2020, at 3-4.  Under the agreement, "[t]he net proceeds of sale, less the mortgage payoff, transfer taxes and other costs of sale, shall be divided by allocating forty percent (40%) to [Goforth] and sixty percent (60%) to Wife."  **Id.** at 4.

---

[3] Unlike the facts in this case, "a judgment creditor may execute on entireties property to enforce his judgment if both spouses are joint debtors."  **Rajaratnam**, 83 A.3d at 174.

The trial court entered a divorce decree on August 19, 2020, wherein it incorporated the marital settlement agreement. Divorce Decree, 8/19/2020. Subsequently, the parties sold the marital property for $175,000.

The trial court explained that it no longer held the net proceeds of the sale of the marital property in custodia legis:

> The [trial c]ourt directed the sale of the marital property and does not continue to hold title to the property in the divorce proceedings. At issue now are the proceeds of the sale, not the title. The [trial c]ourt finds dispositive that during the divorce proceedings[,] [] Goforth did not disclose the confessions of judgment, which were filed of record and served upon him, particularly when he executed the marital settlement agreement. Any allegation that he did not know of the judgments is dubious as service was properly made, by mail in the Huntington National Bank action and in person by the Sheriff with [] Mongell. … As such, this cause of action fails as we decline to assert [in] custodia legis of the marital property.

Trial Court Opinion, 5/20/2024, at 11 (some capitalization and emphasis omitted).

We find the trial court did not abuse its discretion. Upon the entry of the divorce decree, the marital property became a tenancy in common, as each party retained an interest in the property. *See* 23 Pa.C.S. § 3507(a) ("Whenever married persons holding property as tenants by entireties are divorced, they shall, except as otherwise provided by an order made under this chapter, thereafter hold the property as tenants in common of equal one-half shares in value[.]"); *Jawork v. Jawork*, 548 A.2d 290, 292-93 (Pa. Super. 1988) (noting the entry of a divorce decree severs the parties' tenancy

- 9 -

by the entirety and creates a tenancy in common).  Following divorce proceedings, a tenancy in common is subject to the satisfaction of liens held against either party to the tenancy.  *See Frantz v. Frantz*, 972 A.2d 525, 528 (Pa. Super. 2009) (stating "a judgment creditor may obtain a lien against property held by tenants in common even where the lien arises from a judgment against only one of the multiple tenants").  Therefore, because Mongell and Huntington held record liens against Goforth on the date of divorce, their interests attached to Goforth's portion of the marital property when the divorce decree was entered as the marital property became a tenancy in common.  *See Weaver v. Weaver*, 605 A.2d 410, 411-12 (Pa. Super. 1992) (en banc) (concluding that creditor of husband which entered judgment against husband was entitled to share of husband's interest in the property following divorce); *see also Keystone Savings Assoc. v. Kitsock*, 633 A.2d 165, 168 (Pa. Super. 1993) (finding that creditor only succeeded to whatever interest husband acquired in the marital property at the time of equitable distribution).

Property held in custodia legis is only held until the trial court addresses marital interests.  *See Mid-State*, 735 A.2d at 84 (rejecting appellant's argument that property deeded to an ex-spouse pursuant to an equitable distribution order remained in custodia legis until it was actually paid for pursuant to a fifteen–year installment arrangement).  "Protection of the rule of custodi[a] legis is removed when the purpose for which the property is held

has been achieved." ***Weicht v. Auto. Banking Corp.***, 47 A.2d 705, 706 (Pa. 1946). It does not, as Goforth advocates, allow an ex-spouse to shelter the property beyond the date of the sale of the property pursuant to the equitable distribution agreed to by the parties. In this case, the divorce decree had been entered, the property in question had been sold, and the money in question was no longer in the custody of the court. Therefore, property was not held in custodia legis.

We find Goforth's reliance on ***Klebach*** to be misplaced. In ***Klebach***, a husband and wife, who owned realty by the entireties, were involved in divorce proceedings. ***Klebach***, 565 A.2d at 449. During this time, a creditor obtained a judgment solely against the husband. ***Id.*** Prior to the entry of the divorce decree, husband and wife entered into an agreement wherein husband conveyed his interest in the property to the wife. ***Id.*** After the entree of the divorce decree, which directed husband to convey his interest to wife, the parties executed a deed conveying the property to wife. ***Id.*** Wife filed an action to quiet title the property to remove any liens. ***Id.*** The trial court found the creditor had no lien on the property because the property was under the court's jurisdiction during the divorce proceedings. ***Id.*** at 448-49. This Court affirmed, noting the property was held in custodia legis until the parties complied with the court's order—the order to convey the property—and was not subject to attachment by lien. ***Id.*** at 452.

In **Klebach**, the entire marital property was conveyed to wife and husband held no further interest in the property. **See id.** at 450 (noting "[a]t the time the agreement was concluded …, [husband] held no separate interest in the marital residence to which [the] lien could attach."). As such, no tenancy in common for the real estate was created. Contrarily, as noted above, under the marital settlement agreement, Goforth retained a forty percent interest in the marital property, making Goforth and McKenzie tenants in common, and Goforth's portion of the proceeds was not immune from creditors. **See** 23 Pa.C.S. § 3507(a); **Frantz**, 972 A.2d at 528. Accordingly, Goforth's reliance on **Klebach** is misplaced, and the in custodia legis doctrine is not applicable under these facts.

**Marital Settlement Agreement**

In his second claim, Goforth contends that the trial court abused its discretion by failing to consider that the parties were married when they entered into the marital settlement agreement. Goforth's Brief at 38. According to Goforth, the parties were free to dispose of the property pursuant to the agreement without implicating third-party creditors, as the property was owned as tenants by the entireties. **Id.** at 38, 41. He claims that under the agreement, the parties agreed to sell the marital residence, evidencing a joint act which did not have to be performed at the time of the entry of the divorce decree, but instead was a binding contract between them. **Id.** at 40.

In so arguing, Goforth ignores that following the entry of a divorce decree, a tenancy by the entireties property is converted to a tenancy in common property. *See* 23 Pa.C.S. § 3507(a). Furthermore, such property owned as tenants in common is not immune from creditors of one of the owners. *See Frantz*, 972 A.2d at 528. Goforth does not cite any order by the trial court (or even a provision in the marital settlement agreement) dictating that this property was to remain as a tenancy by the entireties until the property was sold. Nor does he cite, let alone discuss, section 3507 of the Divorce Code. He makes much of the fact the parties agreed to sell the property after the entry of the divorce decree, but fails to establish that this somehow delayed or limited the destruction of the entireties, converting the joint ownership into a tenancy in common.

Because Goforth owned the property in question as a tenant in common with McKenzie as of the date of the entry of the divorce decree, the third-party liens attached to his interest at that time. *See Weaver*, 605 A.2d at 411-12; *see also Frantz*, 972 A.2d at 528. We therefore conclude that Goforth's claim is without merit.

## Economic Injustice

In Goforth's third claim, he argues the trial court failed to account for the economic injustice that would result from awarding the proceeds of the sale of the marital property to the creditors. Goforth's Brief at 41. Goforth claims that he bargained for consideration of forty percent of the sale of the

J-A02038-25

marital property, and providing such proceeds to his creditors would deprive him of the agreed-upon contractual provisions under the marital settlement agreement, creating an economic injustice. *Id.* at 41-43. Goforth asserts that he did not bargain for the partial payment of liens as part of the marital settlement agreement. *Id.* at 44.

In so arguing, Goforth relies upon section 3102(a)(6) of the Divorce Code, which provides:

> The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is the policy of the Commonwealth to … [e]ffectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 Pa.C.S. § 3102(a)(6); *see also* Gorforth's Brief at 42, 44. In his view, this supports his claim that the proceeds due to him under the sale of the marital property should not go to his creditors. *See* Goforth's Brief at 42, 44. Because the marital settlement agreement was incorporated into the divorce decree, he contends that it would be inequitable for him not to receive what he bargained for under the agreement. *Id.*

Goforth makes no connection between section 3102(a)(6) of the Divorce Code and the propriety of allowing third-party liens to attach to property held by the debtor spouse. He cites no case law, statute, or rule of court that provides any interplay whatsoever between the economic justice requirement regarding divorcing parties under the Divorce Code and the rights and duties

- 14 -

of judgment creditors. *See Banfield v. Cortés*, 110 A.3d 155, 168 n.11 (Pa. 2015) (noting that where appellate brief "fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him."). Moreover, as the trial court observed, "Henderson argued throughout that [] Goforth is getting no benefit from his marital settlement agreement bargain. Contrary, Goforth is receiving the benefit of money that he owes being paid to his creditors of record on valid liens." Trial Court Opinion, 5/20/2024, at 11.

Based upon Goforth's bald argument, we cannot conclude that the trial court committed any error of law or abuse of discretion. *See* 42 Pa.C.S. § 4303(a) (stating "[a]ny judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property").

## Compliance with 41 P.S. § 407

In his fourth claim, Goforth argues that the trial court failed to account for the fact that the third-party creditors only have confessions of judgment entered against Goforth and did not comply with 41 P.S. § 407. Goforth's Brief at 45-46. According to Goforth, section 407 applies to all confession of judgment proceedings involving residential real property. *Id.* at 46. Goforth notes that Mongell attempted to garnish his account, which establishes execution on the judgment. *Id.* at 47. Goforth claims that neither creditor

obtained a judgment against him in accordance with section 407; thus, their liens did not attach to his portion of the marital property. *Id.* at 47-48.

Section 407 states the following:

(a) As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires.

(b) Any debtor who prevails in any action to remove, suspend or enforce a judgment entered by confession shall be entitled to recover reasonable attorney's fees and costs as determined by the court.

(c) Hereafter when any plaintiff has received payment in full for any judgment entered by confession he shall order the record in the proceeding marked satisfied within thirty days of the receipt thereof, and shall not require any action on the part of the defendant or any payment by him to cover the cost of satisfying the judgment.

41 P.S. § 407.

The plain language of the statute "presupposes the existence of a judgment or decree on confession" … before the second step of levying, executing or garnishing occurs." ***Higgins v. Pavidis***, 839 A.2d 445, 447 (Pa. Super. 2003) (citation, brackets, and quotation marks omitted). The purpose of the statute is "to protect residential real estate owners from execution upon their property pursuant to arbitrary and capricious actions of creditors by confession of judgment." ***Drum v. Leta***, 512 A.2d 36, 38 (Pa. Super. 1986). Importantly, the mere act of confessing a judgment without taking steps to levy or execute on the judgment does not violate section 407(a). ***Higgins***, 839 A.2d at 447 ("[A]n elementary reading of the statute would suggest that the protections of the act apply to the attempted execution.").

The record reflects that by the time of the entry of the divorce decree on August 19, 2020, Mongell and Huntington had obtained judgments against Goforth. Judgment (Huntington), 9/16/2019 (confessing judgment in favor of Huntington in the amount of $150,368.07); Judgment (Goforth), 4/18/2019 (confessing judgment in favor of Mongell in the amount of $521,652.47); ***see also*** N.T., 2/8/2021, at 5, 42 (wherein Henderson has no objection to the judgments entered against Goforth). Upon the entry of the divorce decree, Goforth and McKenzie owned the marital property as tenants in common. ***See*** 23 Pa.C.S. § 3507(a). At this point, the third-party creditors' 2019 judgments attached to Goforth's interest in property. ***See generally Frantz***, 972 A.2d at 528. Importantly, the property was sold and Mongell and Huntington were

- 17 -

entitled to Goforth's portion of the net proceeds of the sale. Neither Mongell nor Huntington took any action to levy, execute, or garnish on the residential property. 41 P.S. § 407(a). As there is no further action seeking execution on the judgments, section 407 is inapplicable. **See Higgins**, 839 A.2d at 447 (concluding that because party had only confessed the judgment but had not commenced execution proceedings, section 407(a) was inapplicable). Thus, Goforth's claim is without merit.[4]

**Erroneous Statements in Trial Court Opinion**

Goforth next argues that the trial court erred by stating that the parties to the divorce action and the third-party creditors agreed to language in McKenzie's November 24, 2020 petition for special relief. Goforth's Brief at 49-57. Relevantly, the trial court stated that "by prior [o]rder and upon consent of the parties, because no litigation remained pending as the divorce was finalized, [the trial c]ourt permitted the sale of the marital residence and directed that [] Goforth's 40% interest in the real estate proceeds be held in escrow for further resolution between the creditors." Trial Court Opinion, 5/20/2024, at 13; **see also id.** at 10 (highlighting an averment in the petition for special relief filed by McKenzie and agreed to by Henderson and Goforth

_____

[4] Goforth also baldly asserts that Mongell failed to revive his confession of judgment on the day the final judgment was entered. Goforth's Brief at 48-49. However, Goforth presents no analysis or citation to the record or case law to support this argument, resulting in its waiver. **See Banfield**, 110 A.3d at 168 n.11 (noting claim is waived where appellant failed to develop an issue in any meaningful way).

- 18 -

that "the share of the real estate proceeds can be held in escrow for further resolution between two creditors: [] Mongell and Huntington []," and noting Henderson "did not object to the [trial c]ourt distributing [] Goforth's proceeds" to the third-party creditors) (emphasis and citation omitted). Goforth contends that the trial court did not support its statement with any authority or citation to the record. Goforth's Brief at 49-50. To that end, Goforth notes that neither he, his attorney, nor the creditors, signed the November 2020 petition for special relief. *Id.* at 51, 52-53, 54. Goforth claims that the evidence of record establishes that there was a dispute over the proceeds of the sale of the marital property. *Id.* at 50-52, 54. He emphasizes that the trial court's December 2020 order includes language to determine which of the parties are entitled to the proceeds. *Id.* at 55-56.

In McKenzie's November 24, 2020 petition for special relief, she asked the trial court to permit the marital property to be sold, the proceeds due to her under the marital settlement agreement to be disbursed, and the remaining sale proceeds be held in escrow until further court order. Petition for Special Relief, 11/24/2020, at 1-2 (unnumbered). On December 7, 2020, the trial court entered an order, directing that a hearing would be held on February 8, 2021 and further directing the sale of the marital property and that the net real estate proceeds after disbursements to McKenzie, must be paid into an escrow account held by Henderson until further order of the court. Trial Court Order, 12/7/2020. On December 30, 2020, Mongell and

Huntington filed a petition for rule to show cause on Goforth to show why the proceeds from the sale of the marital property should not be distributed to the creditors. Petition for Rule to Show Cause, 12/30/2020. Goforth filed a response, raising various claims similar to the ones raised in the instant appeal. Response, 1/29/2021. Subsequently, Goforth and Henderson filed a petition for special relief, asking that the escrowed proceeds from the sale be awarded to Henderson to pay his attorneys' fees before Goforth receives the net proceeds from the sale. Petition for Special Relief, 2/2/2021, at 1-3. On July 19, 2022, the trial court entered an order, granting the petition for rule to show cause filed by Mongell and Huntington, and denying Henderson and Goforth's petition for special relief.

We disagree with Goforth's assertion that the trial court's statement in its opinion on May 24, 2024, regarding consent of the parties relating to the distribution of the proceeds of the marital property, effectively revised the December 7, 2020 order. More specifically, the parties were bound by the trial court's December 7, 2020 order. Moreover, and in any event, the trial court considered the claims raised by Goforth and Henderson regarding their priority in gaining the funds held in escrow. **See** Trial Court Opinion, 5/20/2024, at 7-8 (noting it held a hearing on the issue of attorney's fees from the proceeds of the sale of the marital property). Thus, no relief is due.

**Henderson's Petition for Special Relief**

In his final claim, Goforth raises various arguments that the trial court abused its discretion in denying Henderson's petition for special relief. Goforth's Brief at 57.

### Attorney Fee Agreement and Equitable Lien

Goforth argues that he had a contractual obligation to pay Henderson's attorney's fees with the proceeds of the sale of the property because he had granted Henderson an equitable lien against the proceeds of the sale before the third-party creditor judgments existed. *Id.* at 57-58, 69-70. Specifically, he claims that pursuant to the marital settlement agreement, he agreed to pay Henderson's attorney's fees out of the gross proceeds of the sale of the marital property. *Id.* at 58, 66; *see also id.* at 59, 73 (noting the marital settlement agreement explicitly states that "each party shall pay their own respective attorney fees for all legal services or to be rendered on his behalf") (emphasis and citation omitted). According to Goforth, he and Henderson entered into a fee agreement in July 2018, which indicated that any unpaid balance would be paid from the gross proceeds to his attorneys and that Henderson's firm would have an equitable lien against the property. *Id.* at 60, 61, 67-71; *see also id.* at 68-69 (rebutting the trial court's finding that Henderson did not have a lien because the payment arrangement was not disclosed in the marital settlement agreement by claiming that the fee agreement was protected by attorney-client privilege and disclosure was not required). Goforth asserts that the trial court's denial of Henderson's petition

for special relief prevents him from performing under the marital settlement agreement and fee agreement. *Id.* at 64-65.

Alternatively, Goforth states that third-party creditors may only claim an interest in the proceeds of the sale after the payment of expenses of sale, which includes the attorney's fees. *Id.* at 65, 75. Since Goforth consented to Henderson being paid out of the gross proceeds of the sale, Henderson is not a creditor and does not require priority over other creditors. *Id.* at 65; *see also id.* at 71 (stating that Henderson's fees have a priority to be paid first from the escrowed funds). He additionally contends that it was irrelevant that the third-party creditors did not know about Henderson's equitable lien. *Id.* at 72-75. In this regard, Goforth notes that the creditors had notice of the existence of the marital settlement agreement. *Id.* at 74. He further claims that the third-party creditors would be unjustly enriched if Henderson's fees are not paid. *Id.* at 75-78.

Pennsylvania recognizes two types of attorneys' liens: a charging lien and a retaining lien. *Austin v. Thyssenkrupp Elevator Corp.*, 254 A.3d 760, 766 (Pa. Super. 2021); *see also* Pa.R.P.C. 1.8(i)(1) (noting a lawyer may "acquire a lien authorized by law to secure the lawyer's fee or expenses").

> The charging lien, originally, was defined to be the right of an attorney at law to recover compensation for his services from a fund recovered by his aid, and also the right to be protected by the court to the end that such recovery might be effected. Unlike the retaining lien, the charging lien does not depend upon possession, but upon the favor of the court in protecting attorneys, as its own officers, by taking care, ex oequo et bono, according to the right and good that a party should not run away

with the fruits of the cause without satisfying the legal demands of the attorney by whose industry those fruits were obtained.

*Austin*, 254 A.3d at 766 (citation, brackets, and emphasis omitted).

Courts must consider five factors before issuing a charging lien:

(1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Id.* at 764-65 (citation omitted).

The record reflects that Goforth entered into an agreement to provide legal services with Henderson's law firm for his divorce proceedings in July 2018, which stated, in relevant part:

11. Charging Lien, Real Estate, and Intervention.  You agree that any unpaid balance for legal fees and costs that you owe to the Firm shall constitute an equitable charging lien in the Firm's favor on any assets generated on your behalf in connection with your case. …  Additionally, you agree that if there is a balance due to the Firm at the time of the sale of any real estate owned by you, in whole or in part, or any entity in which you have an ownership interest, the Firm shall be entitled to collect any unpaid balance at the time of settlement where it is understood and agreed by you that the Firm's unpaid balance shall be part of your gross costs of your sale so that before any net proceeds are received by you, the Firm's unpaid balance shall be paid first.  You further agree that no sale of any such real estate owned by you, in whole or in part, or any entity in which you have an ownership interest, shall occur without the Firm's express written consent.  You further understand and agree that the Firm shall have priority of all subsequent encumbrances on your real estate which you acknowledge and agree is hereby perfected from the effective date of this Agreement. …

Agreement, 7/26/2018, at 3.

In 2019, during the divorce proceedings, Mongell and Huntington obtained judgments against Goforth. Subsequently, the parties entered into a marital settlement agreement, wherein Goforth and McKenzie agreed that "each party shall pay their own respective attorney fees for all legal services rendered or to be rendered on his behalf." Marital Settlement Agreement, 7/2/2020, at 7.

Upon entry of the August 2020 divorce decree, as part of the marital settlement agreement, Goforth and McKenzie agreed to sell their marital home for $175,000, with Goforth receiving forty percent of the net proceeds. The trial court entered an order directing that Goforth's portion of proceeds be placed in an escrow account of Henderson without release pending further findings about the "applicability and priority of liens and order distribution of proceeds." Trial Court Order, 12/7/2020, at 1-2 (unnumbered). The trial court then entered an order directing that seventy-five percent of Goforth's proceeds from the marital property be distributed to Mongell and twenty-five percent to Huntington "as partial payment of the judgment liens." Trial Court Order, 5/20/2024.

Regarding the first factor—whether there is a fund in court or otherwise applicable for distribution on equitable principles—Goforth has not established that a fund exists that could be distributed to Henderson. Significantly, when the divorce decree was entered and Henderson sought to enforce a charging

lien on the real estate proceeds, Mongell and Huntington already had judgments entered against Goforth. Thus, the third-party creditors had priority over Henderson's charging lien. *See Shenango Sys. Sols., Inc. v. Micros-Sys., Inc.*, 887 A.2d 772, 775 (Pa. Super. 2005) (finding that third-party creditor, who had a lien against an attorney's client before the resolution of an arbitration, had priority over the attorney's charging lien for attorney's fees arising out of their representation during the arbitration). The amount owed to Mongell and Huntington exceeded Goforth's portion of the net proceeds from the sale of the marital property; therefore, there were no funds available for distribution. *See id.* at 774 (concluding charging lien could not be enforced where there were no funds for distribution because the creditors' judgment was more than the arbitration award). In light of the foregoing, Goforth has not met the first factor of the charging lien test, and Henderson is not entitled to proceeds from the sale of the marital property to pay attorneys' fees. *See id.* at 775.[5]

_____

[5] We note that in his appellate brief, Goforth claims that Henderson and his firm had an "equitable lien" against Goforth's real estate based on the fee agreement. *See* Goforth's Brief at 67-68 (citing Agreement, 7/26/2018, at 3). Goforth quoted language from his agreement with Henderson's firm, but omits the phrase "equitable charging lien," stating instead that there was an "equitable lien." Goforth's Brief at 68. This is clearly unsupported by the record. In any event, a lien attaches to real estate "when it is entered of record in the office of the clerk of the court of common pleas of the county where the real property is situated." 42 Pa.C.S. § 4303(a). Goforth has not established that Henderson has a lien on the marital property.

Additionally, we reject Goforth's argument that the trial court's finding prevented him from performing under the agreement. Goforth cites to no authority to support his claim that his inability to perform a private contract with his attorney would permit the court to release the funds to cover his counsel fees before third-party creditors who had already secured judgments against Goforth. **See** Pa.R.A.P. 2119(a). Nor, incidentally has Goforth established that he cannot pay his attorney's fees.

Finally, we find Goforth's claim that attorneys' fees were included in the expenses related to the sale of the marital property to be unsupported by the record. The marital settlement agreement states that each of the parties were responsible for their own attorneys' fees. **See** Marital Settlement Agreement, 7/2/2020, at 7. Additionally, the order directing the sale of the marital property indicates Goforth was entitled to the net real estate proceeds "after the costs of sale, satisfaction of the PNC mortgage, and disbursements to [McKenzie]." Trial Court Order, 12/7/2020, at 1 (unnumbered). Thus, there is no record support to establish that the payment of attorneys' fees had to be paid from the gross proceeds of the sale of the marital property.[6]

<u>Costs and fees pursuant to 41 P.S. § 407</u>

---

[6] We note that Goforth also provides an extensive argument related to Henderson's knowledge of the sale of the marital property. **See** Goforth's Brief at 62-64. However, regardless of Henderson's knowledge of the sale, no lien for attorney's fees attached to the proceeds from the sale of the property.

Lastly, Goforth argues that his petition for special relief sought "attorney fees and costs from the third-party creditors pursuant to 41 P.S. § 407(b)." Goforth's Brief at 78. Goforth notes this petition was denied or rendered moot by the trial court's finding in favor of the third-party creditors. *Id.* at 78-79. Goforth claims that if this Court finds in his favor, he is entitled to recover attorney fees and costs pursuant to section 407(b). *Id.* at 79.

As the foregoing plainly shows, we conclude that the trial court did not abuse its discretion in denying the petition for special relief. Therefore, Goforth is not entitled to recover attorney's fees and costs under section 407(b).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/21/2025